S04A0149. CULLER v. THE STATE.
S04A0150. HILL v. THE STATE.
S04A0309. WHITE v. THE STATE.
(594 SE2d 631)

SEARS, Presiding Justice.

Appellants Orlando Lee Culler, David Hill and Trayeon White appeal their convictions for felony murder and aggravated assault, resulting in life sentences,[1] claiming numerous instances of trial court error. Having reviewed the record, we conclude that appellants' claims are without merit, and we affirm.

The evidence of record was sufficient for rational triers of fact to conclude that the three appellants were gathered at a Bibb County home when they decided to go a nearby house, located on Amos Street, and retaliate for the death of appellant Culler's brother, who had been killed the previous day. Along with several others, appellants traveled to Amos Street in two cars. All three appellants were armed with handguns. Appellants attempted to kick in the front door of the Amos Street house, and when that failed, they began firing random shots into the house. Of the three people inside the house, one, Waller, was shot in the head and killed. The intended target, Mills, was shot in the shoulder and injured. Hunter, who was asleep in a back bedroom when the shooting occurred, was left unharmed once the gunfire ended. An eyewitness testified that he watched the shooting and heard shots being fired from three distinct guns. Appellant Culler later told a friend that he had fired shots into the home, and thought he had killed Waller. Ballistics reports identified shell casings recovered from the scene as having been fired from at least two different guns, possibly more. DNA testing identified a red baseball cap recovered from the front yard of the Amos Street house as having been worn by appellant Hill.

1. Pointing to evidence they urge indicates that only two shooters fired into the house, appellants argue the jury's verdicts were con-

---

[1] The crimes occurred on November 18, 2001. Appellants were jointly indicted on April 2, 2002. Trial was held November 11-15, 2002. All three appellants were sentenced to life in prison for felony murder and to two probated sentences of fifteen years for two counts of aggravated assault, to be served concurrently to each other and consecutively to the sentence for felony murder. An illegal firearms possession charge against appellant Culler was nol prossed after the convictions. Motions for new trial were filed by appellant Culler on December 18, 2002 (amended on June 17, 2003); by appellant Hill on December 13, 2002 (amended on April 18, 2003); and by appellant White on November 21, 2002 (amended on April 18, 2003). Appellants' new trial motions were denied on July 17, 2003. Appellants Culler, Hill and White filed their notices of appeal on July 24, 2003, August 15, 2003, and August 11, 2003, respectively. The transcript was certified on September 9, 2003. Appellants Culler's and Hill's appeals were docketed with this Court on September 26, 2003, and submitted for decision on briefs on November 11, 2003. Appellant White's appeal was docketed with this Court on October 22, 2003, and orally argued on February 17, 2004.

trary to the weight of the evidence. However, this Court neither reweighs evidence on appeal nor attempts to resolve conflicts in testimony.[2] The evidence of record, construed most favorably to the verdicts, was sufficient to enable rational finders of fact to conclude that appellants are guilty of having committed felony murder and aggravated assault.[3]

2. The trial court did not err in admitting certain photographic evidence. During its investigation, the State took photos of the front yard of the Amos Street house. After the negatives were developed, prints were delivered to the District Attorney and made available to appellants during discovery. None of the photographs showed a red baseball cap in the front yard. However, in a conference held on the first day of jury selection, the State informed the court and defense counsel that it believed the photo shop had used a "cropping procedure" that inadvertently cropped the hat out of a print developed from one of the negatives. The State informed the court it had only discovered the difference between the print and its negative on the previous day. The State announced it was having the negative redeveloped and planned to have the print in hand before jury selection was completed. During jury selection, the State informed appellants that the red cap appeared to be visible in the newly-developed photo and appellants were allowed to examine the photo. Over appellants' objections, the trial court admitted the uncropped photo into evidence.

Appellants Culler and Hill argue that because the State failed to produce the undeveloped negative during discovery, the trial court should have barred the photo's admission, or, alternatively, have offered appellants a continuance. If the State fails to comply with statutory discovery requirements,[4] the court may, in its discretion, order the prosecution to permit inspection, grant a continuance, or — upon a showing of bad faith and prejudice — prohibit the State from introducing the evidence.[5] There is no indication of bad faith on the part of the State, as the first print's failure to show everything included in the negative appears to have been due entirely to the developer's cropping procedure, over which the State had limited, if

---

[2] *Caldwell v. State*, 263 Ga. 560, 562 (436 SE2d 488) (1993).

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Contrary to appellant Hill's argument, the evidence, which included eyewitness testimony, was not entirely circumstantial; hence, we need not consider whether the State excluded every reasonable hypothesis except guilt. See OCGA § 24-4-6.

[4] See OCGA § 17-16-4 et seq. We note that by statute, the State was obligated to make available to the defense those photographs it intended to use as evidence at trial, and there is no indication in the record (nor do appellants claim) that the State intended to use the undeveloped negatives as evidence.

[5] OCGA § 17-16-6.

any, control. Like appellants, the State did not know what the newly-developed photo would show until it was actually processed from the negative. Additionally, as found by the trial court at the new trial hearing, the State alerted both appellants and the court as soon as it became aware of the problem. Accordingly, the trial court did not err by allowing introduction of the photograph.

As for the other two remedies available to appellants, the record reveals not only that no motion for a continuance was made before the trial court, but also that no objection was raised to the trial court's failure to order a continuance. Consequently, that particular claim is procedurally barred on appeal.[6] The record also shows that appellants were permitted to examine the redeveloped photograph at the earliest possible opportunity, after it was obtained by the State.

Finally, we note that appellants concede they examined the hat itself during discovery and knew beforehand that the State would claim at trial that the hat was recovered from the crime scene. At trial, the hat was admitted without objection and two investigating officers testified that it was discovered during their investigation of the crime scene. Accordingly, it appears the redeveloped photograph was cumulative of other evidence introduced at trial, and that appellants suffered no significant prejudice due to its admission. It follows that the trial court did not err by allowing the newly-developed photograph into evidence.

3. The trial court did not abuse its discretion by denying appellants Culler's and Hill's motions for mistrial when a State's witness testified he had visited the jail where appellants were being held in order to obtain blood samples from them. Appellants urge that when this statement was made, they had not placed their character in evidence.

The decision whether to grant a mistrial is within the trial court's discretion and will not be disturbed so long as proper remedial measures are taken to ensure the right to a fair trial.[7] In this case, the trial court determined the detective's improper statement was inadvertent and gave a curative instruction to the jurors, directing them to disregard the statement in its entirety and not to consider it in connection with appellants' trials. We find this remedial measure to have been satisfactory. Hence, the mistrial motions were properly denied.

4. The trial court did not err in denying appellants Culler's and Hill's motions for a directed verdict as to one of the aggravated assault charges. The indictment charged appellants with aggravated

[6] *Watts v. State*, 265 Ga. 888 (463 SE2d 696) (1995).
[7] *Carruthers v. State*, 272 Ga. 306, 314 (528 SE2d 217) (2000).

assault against one of the victims, Hunter, by shooting at him with a handgun, a deadly weapon. Appellants argue the State failed to establish the elements of this crime because neither of them knew that Hunter was in the house at the time of the shooting; Hunter himself slept through the entire shooting; and none of the bullets fired into the house reached the bedroom where Hunter was asleep.

A person commits aggravated assault when, among other actions, he assaults another with a deadly weapon which, when used offensively, is likely to result in serious bodily injury.[8] In this case, appellants did not act with criminal negligence.[9] To the contrary, the evidence clearly showed that appellants intentionally fired bullets into a house occupied by three people. Appellants' primary objective was to kill Mills, whom they blamed for the death of Culler's brother, but it was likely that violent harm would also be inflicted against all persons inside the home. When an unintended victim (such as Hunter) is subjected to harm due to an unlawful act intentionally aimed at someone else (such as Mills), the law prevents the actor from taking advantage of his own misdirected wrongful conduct and transfers the original intent from the one against whom it was intended to the one who suffered harm.[10] Accordingly, it is of no import that appellants were unaware that Hunter was in the home. It is obvious that by intentionally firing into the home, appellants were likely to seriously injure all the occupants, not just their primary target, Mills. Such harm was likely regardless of whether a particular occupant (such as Hunter), was aware of the shooting as it occurred. It follows that the trial court properly denied the motion for directed verdict on the charges of aggravated assault against Hunter.

5. Appellants Hill and White urge that the trial court abused its discretion by permitting the State to treat its witness Bradberry as hostile by asking leading questions. During the investigation, Bradberry provided a statement to police claiming he was among those who went to the Amos Street house with appellants on the night of the shooting and that he watched the shooting occur. Once on the stand, however, Bradberry said he feared for his safety and was very nervous about testifying. Bradberry attempted to evade the State's questions about matters such as whether the signature on his statement actually was his, and was extremely reticent about answering a number of questions on other topics. When asked about driving to the house on Amos Street, he said he had "no comment." At that point, the State moved to treat Bradberry as a hostile witness.

---

[8] OCGA § 16-5-21 (a) (2).

[9] See *Stobbart v. State*, 272 Ga. 608, 611-612 (533 SE2d 379) (2000); *Dunagan v. State*, 269 Ga. 590, 592-593 (502 SE2d 726) (1998).

[10] *Happoldt v. State*, 267 Ga. 126, 127 (475 SE2d 627) (1996).

The trial court denied the State's request. The State continued its questioning and Bradberry accelerated his evasive conduct. When the State finally asked Bradberry if he would tell the jury what happened at the time of the shooting, Bradberry said he would "rather not." At that point, the State renewed its motion and the trial court allowed it to treat Bradberry as a hostile witness.

A trial court has discretion to permit leading questions on direct examination when a witness is reluctant, hostile, or overly nervous.[11] Based upon our review of the record, the trial court acted well within the bounds of its discretion by permitting the State to treat Bradberry as a hostile witness.

6. Appellant Culler claims the trial court abused its discretion in denying his motion for a mistrial when it permitted co-defendant White to introduce a purportedly prejudicial video into evidence. When co-defendant White sought to introduce this piece of evidence, the State objected on relevancy grounds. That objection was overruled. Appellant, however, did not object to the video's admission and seek a mistrial until the following day. Because appellant failed to raise a contemporaneous objection, his mistrial motion was untimely and will not be considered on appeal.[12]

7. Appellants Hill and White argue the trial court erred by denying their new trial motions because after trial, their attorneys received a letter from co-defendant Culler in which Culler urged that he alone was responsible for the shooting and that neither Hill nor White was present at the crime scene. However, in his letters, Culler also stated he was coming forward with this information because he desired a lesser sentence than the one imposed after conviction. This motive, we believe, significantly affected the credibility of Culler's post-trial "confession." Hence, we conclude it is not altogether probable that this newly-discovered evidence would produce different verdicts for appellants at a new trial. Furthermore, appellants have not demonstrated that the substance of this new evidence could not have been uncovered before trial by the exercise of due diligence. Moreover, Culler's letters sought to impeach the trial testimony of certain witnesses. Accordingly, the trial court correctly found that appellants failed to satisfy the standard for the grant of a new trial based upon purported newly-discovered evidence.[13]

8. Appellant White claims he should be granted a new trial because while his appeal was pending, the intended victim of the shooting, Mills, issued a statement claiming that on the night of the shooting, he did not see anyone who resembled appellant among the

---

[11] *Hayes v. State*, 268 Ga. 809, 812-813 (493 SE2d 169) (1997).
[12] *Boyd v. State*, 275 Ga. 237, 238 (564 SE2d 185) (2002).
[13] See *Timberlake v. State*, 246 Ga. 488, 491 (271 SE2d 792) (1980).

shooters. Appellant's extraordinary request for a new trial, however, should be directed to the trial court.[14]

9. Appellant White claims the trial court erred in denying his motion for new trial because, while questioning witness Bradberry, the prosecutor made misleading statements and essentially served as a witness who was never subjected to cross-examination. Because these alleged errors were not objected to at trial, they will not be considered on appeal.[15]

*Judgments affirmed. All the Justices concur.*

DECIDED MARCH 29, 2004.

*Bernadette C. Crucilla,* for appellant (case no. S04A0149).
*R. Lars Anderson,* for appellant (case no. S04A0150).
*Roy Miller,* for appellant (case no. S04A0309).
*Howard Z. Simms, District Attorney, Nancy S. Moskaly, Assistant District Attorney, Thurbert E. Baker, Attorney General, Jason C. Fisher, Assistant Attorney General,* for appellee.

---

[14] OCGA §§ 5-5-1; 5-5-23; 5-5-41.
[15] *Quintanilla v. State,* 273 Ga. 20, 21 (537 SE2d 352) (2000).