A05A0787. LEVEL v. THE STATE.
(615 SE2d 640)

ANDREWS, Presiding Judge.
Kenneth Level, convicted by a jury of armed robbery (Count 1), kidnapping with bodily injury (Count 2), aggravated assault (Count 3), possession of a firearm during commission of a crime (Count 4), and criminal attempt to commit armed robbery (Count 5), appeals from the trial court's denial of his motion for new trial, contending that his motion for directed verdict should have been granted on Count 5 and that his trial counsel was ineffective.

1. Level's first enumeration is that the trial court committed error by not granting his motion for directed verdict on criminal attempt to commit armed robbery of Einstein Brothers Bagels (Einstein Bagels)[1] on July 10, 2003.

> The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction. We view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.

(Footnotes omitted.) *Moore v. State*, 265 Ga. App. 511, 513 (594 SE2d 734) (2004).

So viewed, the evidence was that Level, who had previously managed a Caribou Coffee store, received a business license for a new business venture, K. R. D. Moving Specialists, on June 16, 2003. Level had asked Elijah Lee, a recent high school graduate with whom Level had worked, and Regulus Barber, a friend and co-worker for 14 years, to work for him at K. R. D. Because of the costs of starting his new business, however, Level's bank account was "shot to hell," his credit cards were maxed out, and he needed cash. Level told Lee and Barber that he needed about $1,400 to advertise his company on www.monstermovers.com to get the business going by attracting customers.

In June 2003, Level asked Lee[2] to rob the Caribou Coffee where Level had previously been manager. Level told Lee he knew everything about how the Caribou Coffee was run and that he did not want to do it himself because he knew the manager, Bridget Crosby. Level also told Lee that he had watched the store recently to make sure the operations were basically the same as when he had been manager. Lee understood that he was not going to get any of the proceeds of the robbery, but that the money would be put into K. R. D.

In the early morning hours of June 24, 2003, Level picked up Lee and drove to the Caribou Coffee in his gold Ford Escort. Arriving around 3:30 a.m., Level parked the Escort in the wooded area behind the building. Lee wore a knit cap, in which eye holes had been cut,

---

[1] The remaining counts resulted from the June 24, 2003 robbery of Caribou Coffee.

[2] Lee pled guilty to Counts 1-4 arising from the Caribou Coffee robbery, and Count 5, the later attempted robbery of Einstein Bagels. He testified for the State at the trial.

pulled down over his face, and black gloves. When Crosby arrived and walked up to the back door at approximately 4:45 a.m., Lee took the pistol Level handed him, got out of the Escort, and walked over to Crosby. Crosby started "screaming and running at the same time," but Lee grabbed her and struggled with her, finally striking Crosby across the face and on the back of her head with the handgun. Crosby fell to the ground, dropping her keys, purse, briefcase, binder, and store aprons. Lee picked up the keys, opened the rear door, and dragged Crosby inside. There, Lee taped her hands behind her back with duct tape and demanded the combinations to the office safes, which Crosby provided. Lee took cash from the register drawers and the bagged deposits, which Crosby estimated to be about $1,000. Lee left through the rear door and gave the money to Level. Crosby suffered two cracked ribs, was black and blue for a while, had a big bump on the back of her head and the imprint of the gun on her face, and three fingernails had been torn from her hands.

Around July 8, 2003, Level called Lee and asked him to rob the Einstein Bagels near Cumberland Parkway. Level, however, could not be present for this robbery, so he told Lee that he would send Regulus Barber[3] to pick Lee up in Level's Escort. Level gave Lee the cell phone number for Barber and also asked Lee to get a friend to assist with the robbery. Lee asked Omarris Edwards,[4] a friend and high school classmate, and he agreed to participate. Level told Lee and Barber that the baker usually came in around 4:00 a.m. and the manager arrived around 5:00 a.m. The proceeds from this robbery were also going to Level's business.

In the early morning hours of July 10, 2003, Lee and Edwards went, in Lee's black Ford Focus, to the area where Einstein Bagels was located and parked near an Eckerd's drugstore. Earlier, Barber had met with Level and gotten from him the gold Escort, the gun, bullets, and a pair of gloves. Level told Barber to give the gun, unloaded, to Lee. Barber drove Level's gold Escort and parked it in the area near Studio Plus and Einstein Bagels. Barber was going to serve as the lookout for Lee during the robbery. Lee and Barber spoke several times via cell phone. After Barber arrived and parked, Lee and Edwards walked over and got in Level's gold Escort. When Lee realized he had forgotten the duct tape, he went back to the Focus and got it.

Cobb County Police Detectives Smith and Dong were in the same area, investigating another case, when Smith saw Lee backing into

---

[3] Barber also pled guilty to the attempted robbery of Einstein Bagels and testified for the State.

[4] During the trial, Edwards pled guilty to the attempted robbery of Einstein Bagels.

the parking space. Smith thought it was an unusual time to be parking there, since all the businesses were closed. About ten minutes later, the detectives noticed that the black Focus was empty. After driving around the area, they spotted Level's gold Escort parked, with three men sitting in it. Lee, Barber, and Edwards were all looking straight ahead, not talking, and all had stunned looks on their faces. As the detectives drove by in their black Crown Victoria, the three men recognized it as a detective car and Lee said, "That's five-o right there." Barber then drove away and the detectives followed and stopped the Escort. While the detectives were talking to Lee and Barber, who were in the front seat, Detective Smith walked around the car and shone his flashlight into the rear seat where Edwards was sitting. Smith saw in plain sight what looked like the rear grip of a Glock handgun and initiated a more thorough investigation and search of the car. Although that gun was a BB pistol, Smith saw in the backpack which was partially hiding the BB pistol, a roll of duct tape, and a large hunting knife. Also found were a pair of mittens, a knit cap with two holes cut in it, black gloves, and a compact disc case. Upon picking up the case to move it, Smith realized it was much too heavy to be holding CDs and opened it, finding a silver nine millimeter semi-automatic handgun. Upon opening the glove compartment, the detectives found a bag containing nine millimeter bullets.

Cell phone records reflected Lee and Barber spoke to each other prior to meeting at Einstein Bagels. At 4:06 a.m., Lee placed a completed three-second call to Level's phone. The detectives stopped the gold Escort at 4:12 a.m. Cell phone records show that calls were made from Level's phone to Lee's cell phone at 6:29 a.m., 7:22 a.m., 8:50 a.m., 9:36 a.m., and 10:13 a.m., while Lee was in custody.

The sole basis for Level's argument is that the three young men withdrew from commission of the crime.

Criminal attempt is committed when a person, with intent to commit a specific crime, "performs any act which constitutes a substantial step toward the commission of that crime." OCGA § 16-4-1. Pursuant to OCGA § 16-4-5 (a), it is an affirmative defense when one abandons the effort to commit the crime or otherwise prevents its commission under circumstances "manifesting a voluntary and complete renunciation of his criminal purpose." Such a renunciation is not voluntary and complete when, as here, it results from "[a] belief that circumstances exist which increase the probability of detection or apprehension of the person or which render more difficult the accomplishment of the criminal purpose." OCGA § 16-4-5 (b) (1).

Here, Lee, Barber, and Edwards made no effort to abandon the robbery until the fortuitous arrival of the police. See *Jones v. State*, 246 Ga. App. 494, 495 (1) (b) (540 SE2d 693) (2000); *Hayes v. State*,

193 Ga. App. 33, 37 (7) (387 SE2d 139) (1989). Also, none of these three actual perpetrators of the attempted robbery asserted the affirmative defense of abandonment.

A directed verdict on this count was not demanded, and there was no error in its denial.

2. Level contends that his trial counsel was ineffective for failing to file a motion to sever Count 5 from the remaining counts; for failing to file a motion to suppress regarding the stop of the Escort; for failing to object to conclusions and prejudicial statements of Detective McIntyre; for failing to object to statements made by the prosecutor during closing argument; for failing to ask the State's witnesses about an affidavit exonerating Level; and for failing to investigate adequately the case and call witnesses.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984)[.] The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. [As the appellate court,] [w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003).

(a) Failure to file motion to sever.

We first note that the only authority cited by appellate counsel in support of this argument is that of federal courts which, while persuasive, is not binding on this Court. *Russell v. Parkford Mgmt. Co.*, 235 Ga. App. 81, 82 (2) (508 SE2d 454) (1998).

As trial counsel noted during the hearing on the motion for new trial, after researching the issue, he concluded that there was no basis for such a motion, especially since he was aware that Lee and Barber had pled guilty and would be testifying against Level, and the robbery and attempted robbery involved one of the same perpetrators (Lee), the same gun, and the same car.[5]

---

[5] It therefore would have been admissible as a similar transaction to show identity, motive,

The decision whether to file a motion to sever is a matter of trial tactics and the fact that such a motion was not filed does not require a finding that trial counsel was ineffective. *Bogan v. State*, 249 Ga. App. 242, 245 (2) (b) (547 SE2d 326) (2001); *Louis v. State*, 185 Ga. App. 472, 474 (3) (364 SE2d 607) (1988).

The trial court's decision on this ground was not clearly erroneous.

(b) Failure to file motion to suppress.

Level cites no authority in support of his contention that such a motion, if filed, would have been successful, a prerequisite for demonstrating ineffective assistance in such a situation. *Morris v. State*, 278 Ga. 710, 712 (2) (606 SE2d 258) (2004).

In fact, Level would have no standing to contest such a search since he had relinquished possession of the Escort to Barber, thereby abandoning any expectation of privacy in the car. *Rose v. State*, 263 Ga. App. 263, 264 (587 SE2d 326) (2003); *Espinoza v. State*, 244 Ga. App. 96, 98 (4) (534 SE2d 824) (2000).

(c) Failure to object to detective's testimony.

During Detective McIntyre's direct examination, he explained that, based on his briefing by Detective Smith, his review of materials in the case, and his listening to parts of the interview tape of Lee, he told Level about his co-defendants' statements. In fact, he "played for him the portions of the tape in which Elijah Lee implicated him as the *mastermind* of the robberies."

It is this testimony to which appellate counsel says failure to object was rendering ineffective assistance because the statement was prejudicial and called for a conclusion with regard to Level. First, an officer's explanation of how his suspicions were aroused about a defendant is not objectionable. *Morrison v. State*, 272 Ga. App. 34, 40 (4) (611 SE2d 720) (2005); *Hester v. State*, 261 Ga. App. 614, 617 (3) (b) (583 SE2d 274) (2003). Also, since both Lee and Barber testified that Level was the instigator and planner of the two incidents, i.e., the mastermind, any such reference by McIntyre, even if otherwise objectionable, was not harmful. *Selley v. State*, 237 Ga. App. 47, 48 (1) (514 SE2d 706) (1999).

(d) Failure to object to prosecutor's closing argument.

During his closing argument, in an effort to explain circumstantial evidence, the prosecutor gave the example of a mother baking a chocolate cake, icing it with chocolate frosting, putting it in the kitchen, and directing her young son not to touch it. When she returns to the kitchen about ten minutes later, the cake has a large hole in the

---

intent, course of conduct, scheme, plan, or bent of mind. *King v. State*, 246 Ga. App. 100, 101 (2) (539 SE2d 614) (2000).

center. Upon calling her son, she finds him with chocolate smeared around his mouth and chocolate on his hands. As the prosecutor argued "[s]he didn't see the little boy eat that cake. But is there any — really, any question at all who got into it? That's circumstantial evidence."

Level contends, without citing any specific authority, that this argument is a misstatement of the law. The trial court did give a full and correct charge to the jury of the legal definition of circumstantial evidence.

> Counsel enjoys very wide latitude in closing arguments, and may make use of well-known historical facts and illustrations, so long as he does not make extrinsic or prejudicial statements that have no basis in the evidence. . . . Counsel's illustrations during closing argument may be as various as are the resources of his genius; his argumentation as full and profound as his learning can make it; and he may, if he will, give play to his wit, or wing to his imagination. (Punctuation and footnotes omitted.) *Head v. State*, 276 Ga. 131, 135 (6) (575 SE2d 883) (2003).

*James v. State*, 265 Ga. App. 689, 690 (1) (a) (595 SE2d 364) (2004). The example of circumstantial evidence used by the prosecutor here was within the parameter of appropriate closing argument.[6] There was no error in the trial court's denial of the motion for new trial on this ground.

(e) Failure to ask the State's witnesses about an affidavit exonerating Level.

Although appellate counsel's brief quotes an exchange between trial counsel and the court, there is no reference to the lengthy transcript where this exchange allegedly occurred, in violation of Court of Appeals Rule 25 (c) (3).

In fact, as noted by appellee, trial counsel did extensively cross-examine Barber about a written statement he gave purporting to exonerate Level.

Therefore, no error on this ground has been demonstrated.

(f) Failure to fully investigate case or call alibi witness.

Level's argument that trial counsel did not fully investigate the case and improperly did not call his wife to testify regarding a purported alibi for the Caribou Coffee robbery is also without merit.

---

[6] See Supreme Court cases cited in *James v. State*, supra at 691, finding that analogizing the defendant to Jim Jones, the Nazis, the Viet Cong, and well-known murderers Charles Manson, David Berkowitz, and Jeffrey Dahmer was not improper.

Trial counsel had practiced law for five years, including three as a prosecutor in the Cobb County Solicitor-General's Office. He was retained by Level a few months before trial and reviewed the discovery materials which he received from the State. He discussed the discovery material several times with Level. During his numerous meetings with Level, which trial counsel estimated as more than ten, he went over the strengths and weaknesses of the State's case with Level. He also visited the crime scenes and spoke to the witnesses whose names were provided by Level, the primary one being his wife.

Appellate counsel has failed to show what evidence was not produced or investigated by trial counsel which should have been, thereby failing to make his case for ineffective assistance. See, e.g., *Pate v. State*, 269 Ga. App. 684, 686 (605 SE2d 90) (2004); *Villegas v. State*, 262 Ga. App. 55, 57 (3) (b), (c) (584 SE2d 666) (2003).

Regarding Mrs. Level's value as a witness, trial counsel testified that he had spoken to her on several occasions and that, while she was willing to testify and indicated that Level was with her during a span of time, she was unable to recall specific dates, and the time span did not exclude Level's being at Caribou Coffee. Based on this and the fact that juries do not put a lot of stock in defendants' spouses' testimony, trial counsel made a strategic decision not to call Mrs. Level. Further, Level would have lost closing argument by calling his wife.

"Decisions as to which witnesses to call are matters of trial strategy and tactics that usually do not constitute ineffective assistance of counsel. *Beattie v. State*, 240 Ga. App. 327, 328 (2) (b) (523 SE2d 389) (1999). Moreover, [Level] has not shown that additional evidence would have changed the outcome of the trial." *Lord v. State*, 259 Ga. App. 449, 451 (2) (577 SE2d 103) (2003).

There was no error in the denial of the motion for new trial on this ground.

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED JUNE 9, 2005.

*Robert H. Alexander III*, for appellant.
*Patrick H. Head, District Attorney, H. Maddox Kilgore, Amelia G. Pray, Assistant District Attorneys*, for appellee.