## A06A0517. JENKINS v. THE STATE.
(633 SE2d 61)

PHIPPS, Judge.

After being tried before a jury with co-indictee Mario Pringle, Willie Jenkins was convicted of committing an armed robbery upon Kevin Phillips, issuing terroristic threats to Phillips, kidnapping Phillips, possessing a firearm during the commission of a crime, following too closely, disobeying a red light, fleeing and eluding a police officer, committing seven counts of hit and run, driving without a license in his immediate possession, driving on a suspended license, driving without restraint of a seat belt, and driving without proof of insurance. Appealing, Jenkins contests the sufficiency of the evidence and claims his trial counsel was ineffective. Because he has failed to show reversible error, we affirm.

1. Jenkins contends the evidence was insufficient to support his convictions. On appeal, evidence is viewed in the light most favorable to the jury's verdict, and the appellant no longer enjoys the presumption of innocence.[1] This court does not weigh the evidence or determine witness credibility, but determines only if the evidence was sufficient for a rational trier of fact to have found the appellant guilty of the charged offense beyond a reasonable doubt.[2]

Phillips testified that one night in October 2003, Jenkins, Pringle, and another man approached him near Phillips's Cutlass Sierra. Pringle pointed a gun at Phillips and ordered him into the driver's seat of the car. The three men also got into Phillips's car and then commanded Phillips, "Just drive." Phillips complied, and Pringle held the gun at Phillips's head. Jenkins, who was seated in the front passenger seat, removed Phillips's wallet from his pocket, took the money, and rifled through Phillips's bank and credit cards. The men directed Phillips to drive to an automatic teller machine (ATM) and withdraw funds. Having reached an ATM, Phillips withdrew money and surrendered it to Jenkins. Phillips recalled that the whole time

---

[1] *James v. State*, 274 Ga. App. 498 (1) (618 SE2d 133) (2005).

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *James*, supra.

the three men discussed "doing me in and getting rid of me." The men directed Phillips to drive to a usually desolate area, only to discover a truck parked there. Phillips testified that the men told him that he "was lucky that that truck was there, because if it wasn't, I would be swimming and that, you know, I'd better say my prayers. . . ." Phillips recounted that the men next instructed him to drive to another ATM and withdraw more funds, informing him that, afterward, "[W]e're going to kill you." At a red light, Phillips fled the car, and he heard the car speed away.

Phillips immediately reported his ordeal to police. Descriptions of his three assailants, his car, and their general travel direction were broadcast over police radio. Police officers in two marked patrol units soon spotted Phillips's car, followed it to a red light, and activated their blue lights. Officers walked toward Phillips's car, which had darkly tinted windows, shouting commands for all occupants to exit the car. But Phillips's car rammed the pickup truck ahead of it, pushing it out of its path, and raced through the red light. A high-speed chase ensued, and additional police officers in marked police vehicles with sirens and blue lights activated joined the pursuit. As Phillips's car maneuvered through traffic, it struck the vehicles of five motorists and crashed into the back of a motorcyclist, becoming disabled by the several impacts. Phillips's car was "totaled." Yet, as police officers converged upon it, the driver continued to press the gas pedal.

Police officers extricated Jenkins, Pringle, and the third occupant from Phillips's car. Jenkins was pulled out of the driver's seat. According to one police officer, Jenkins had not been wearing a seat belt; his driver's license had been suspended; and he was "an uninsured person that was not authorized to drive [Phillips's] vehicle." The officers retrieved a gun and Phillips's wallet from the car.

The state also presented evidence that, earlier in October 2003, Jenkins was involved in a transaction similar to the one involving Phillips. John Schomburg testified that Jenkins had approached him at a construction site, claimed that he was a mason, and asked for work. Schomburg responded that he had no need for a mason. Moments later, Jenkins pointed a gun at Schomburg, and another man who had joined Jenkins demanded money from Schomburg. When Schomburg handed the men the money from his wallet, Jenkins spotted Schomburg's credit cards. Jenkins ordered Schomburg to get into Schomburg's truck and drive him and his cohort to a bank to withdraw funds from Schomburg's account. Jenkins warned Schomburg that he would "wet him up" if he did not comply. The three men got into Schomburg's truck, and Jenkins held a gun to Schomburg's head. About that time, other construction workers approached the vicinity, and Schomburg fled the scene on foot. He reported his ordeal

to police and later picked Jenkins out of a photographic lineup as one of the two men who had accosted him.

Contrary to Jenkins's contention, the evidence was sufficient to support his convictions.[3]

2. Jenkins contends that the trial court erred in rejecting his claim of ineffective assistance of counsel. To prevail on this contention, Jenkins must establish, pursuant to *Strickland v. Washington*,[4] that his trial counsel's performance was deficient and that a reasonable probability exists that, but for the deficient performance, the trial would have had a different outcome.

> Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact. In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, this court upholds the trial court's factual findings unless they are clearly erroneous; we review a trial court's legal conclusions de novo.[5]

We need not address both components of the *Strickland* test if the showing on one is insufficient; nor must we address the components in any particular order.[6]

(a) Jenkins argues that his trial counsel was ineffective for failing to move to sever his trial from Pringle's. He complains that a statement Pringle made to the police, which the jury heard, implicated him. That statement included Pringle's admission that he, "Bullet," and "the little one" had been with Phillips when Phillips was driving the car.

The mere fact that a motion to sever was not filed does not require a finding that trial counsel was ineffective.[7] In this case, even if the jury believed that "Bullet" or "the little one" referred to Jenkins, in light of other overwhelming evidence properly admitted against

---

[3] See *Jackson*, supra; *James*, supra; OCGA §§ 16-8-41 (a) (armed robbery); 16-11-37 (a) (terroristic threats); 16-5-40 (a) (kidnapping); 16-11-106 (b) (1) (possession of a firearm during commission of a crime); 40-6-49 (following too closely); 40-6-20 (disobeying red light); 40-6-395 (a) (fleeing and attempting to elude police officer); 40-6-270 (hit and run); 40-5-29 (a) (operating a motor vehicle without license in immediate possession); 40-5-121 (a) (driving when the privilege to do so has been suspended); 40-8-76.1 (b) (traveling in front seat of a passenger vehicle without restraint of a seat safety belt); 40-6-10 (through December 2003, operator of motor vehicle must have proof of required minimum insurance coverage in the vehicle); see further *Broadnax-Woodland v. State*, 265 Ga. App. 669, 672 (2), n. 1 (595 SE2d 350) (2004) (OCGA § 40-6-10 provides that, until December 21, 2003, the operator of a vehicle must have proof of insurance in the vehicle at all times).

[4] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[5] *Bruce v. State*, 268 Ga. App. 677, 679 (603 SE2d 33) (2004) (footnotes omitted).

[6] *Turner v. State*, 253 Ga. App. 760, 763 (6) (560 SE2d 539) (2002).

[7] *Level v. State*, 273 Ga. App. 601, 606 (2) (a) (615 SE2d 640) (2005).

Jenkins, there is no reasonable probability that the outcome of his trial would have been different had the jury not heard Pringle's statement.[8]

(b) Jenkins argues that his trial counsel was ineffective for failing to call as a witness a certain individual who would have provided evidence that, according to Jenkins, was crucial to his defense. Jenkins proffered at the motion for new trial hearing that the individual would have testified that he had been enrolled in a masonry course for only a few weeks and had never obtained any bricklaying experience. Jenkins argues that this testimony would have impeached Schomburg's testimony that he had claimed to be a brick mason. In light of the overwhelming evidence against Jenkins, there is no reasonable probability that the outcome of his trial would have been different had the jury heard from some other witness about Jenkins's background in brick masonry.[9]

(c) Finally, Jenkins argues that his trial counsel was ineffective because he was ill-prepared for trial. However, Jenkins makes only bare assertions that his trial counsel failed to investigate sufficiently the facts and law concerning the charges against him, failed to understand sufficiently the facts and law pertaining to his charges, failed to meet with him an adequate number of times to prepare his defense, and failed to review discovery sufficiently with him. Jenkins does not specify what additional relevant and favorable facts or law his trial counsel failed to use in his defense. Nor has Jenkins met his burden of making an affirmative showing that specifically demonstrates how counsel's alleged failures affected the outcome of his case.[10]

*Judgment affirmed. Ruffin, C. J., and Smith, P. J., concur.*

DECIDED JUNE 19, 2006.

*Martin G. Hilliard*, for appellant.
*Spencer Lawton, Jr., District Attorney, Larry Chisolm, Assistant District Attorney*, for appellee.

---

[8] See generally *Burgess v. State*, 278 Ga. 314, 315 (1) (602 SE2d 566) (2004) (considering the strength of the evidence against defendant, there was no reasonable probability that the outcome of the trial would have been different if counsel had raised a *Bruton* objection and had succeeded in excluding from evidence the contested statement).

[9] See *Marlin v. State*, 273 Ga. App. 856, 858 (1) (616 SE2d 176) (2005).

[10] See generally *Robinson v. State*, 278 Ga. 31, 35 (3) (b) (597 SE2d 386) (2004); *Level*, supra at 608 (2) (f); *Sewell v. State*, 229 Ga. App. 685, 689 (1) (d) (494 SE2d 512) (1997).