**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS*
*COURT. ALL FILINGS MUST BE SUBMITTED WITHIN*
*THE TIMES SET BY OUR COURT RULES.*

**October 21, 2020**

# In the Court of Appeals of Georgia

A20A0994. SHARDOW v. THE STATE.

REESE, Presiding Judge.

After two jury trials, Katrina Shardow was convicted of three counts of aggravated assault, two counts of possession of a firearm during the commission of a felony, and one count each of criminal damage to property, financial transaction card fraud, and theft by conversion.[1] On appeal, Shardow argues that the trial court erred in denying her motion for a directed verdict on the theft by conversion count, and that the evidence was insufficient to support two of her aggravated assault convictions. For the reasons set forth infra, we affirm.

---

[1] See OCGA §§ 16-5-21 (a) (1); 16-11-106 (b); 16-7-23; 16-9-33; 16-8-4. During the first trial, the jury only reached an unanimous verdict for the financial transaction card fraud and theft by conversion charges. The jury found Shardow guilty of the other charges noted above at the second trial.

Viewed in the light most favorable to the jury's verdict,[2] and relevant to the issues on appeal, the evidence shows the following. In December 2013, Shardow went to DeShaunna Swanson's apartment to ask whether she had co-defendant's Tshombe Stripling's cell phone. Swanson had filed a police report against Stripling about a week earlier. Swanson did not know what cell phone Shardow was referring to, and left the apartment in order to talk with Stripling. When Swanson walked down the stairs out of her apartment building, Stripling started shooting at her from inside his vehicle, a 2014 Jeep. Swanson did not see where Shardow went when the shooting began, but overheard Shardow tell Stripling, "You better watch where you shooting." Shardow did not tell Stripling to stop shooting.

Swanson ran back inside her apartment, and Stripling fired more shots into the building. Swanson testified that another victim, Brittney Dixon, and Swanson's four-year-old son were inside the apartment when Stripling shot into it. Police officers recovered shell casings outside the building and observed bullet holes in Swanson's apartment. Based on this evidence, the jury found Shardow guilty of, among other charges, aggravated assault with a deadly weapon against Dixon and Swanson's son.[3]

---

[2] See *Martin v. State*, 349 Ga. App. 656, 656-657 (1) (825 SE2d 227) (2019).

[3] See OCGA § 16-5-21 (a) (2).

In November 2013, about a month before the shooting, Shardow rented a 2014 Grand Jeep Cherokee from Budget Rent-A-Car. Shardow used Budget's express online booking system. That program, normally used for business customers, did not require her to go to a Budget agent and sign paperwork. During booking, Shardow submitted a credit card number belonging to Frederick Motter. Motter did not know Shardow or give her permission to use his card. After Shardow failed to return the Jeep by the due date, Budget attempted to charge the credit card, but it was declined by American Express for suspected fraudulent activity. A Budget employee attempted to call the phone number submitted at booking but it was a non-working number. About two weeks later, Shardow reported to the police that the vehicle had been stolen while she was at a gas station. Shortly after officers responded to that call, the police found the vehicle engulfed in flames a couple of miles away. Based on this evidence, the jury found Shardow guilty of theft by conversion and financial transaction card fraud.[4]

Shardow filed a motion for new trial, which the trial court denied after a hearing. This appeal followed.

---

[4] See OCGA §§ 16-8-4; 16-9-33.

3

In reviewing a challenge to the sufficiency of the evidence and the denial of a motion for a directed verdict, we construe the evidence in the light most favorable to the verdict, and the defendant no longer enjoys a presumption of innocence.[5] We do not weigh the evidence or resolve issues of witness credibility, but merely determine whether the jury was authorized to find the defendant guilty of the charged offenses beyond a reasonable doubt.[6] With these guiding principles in mind, we now turn to Shardow's specific claims of error.

1. Shardow argues that the trial court erred in denying her motion for a directed verdict on the theft by conversion charge. Specifically, she contends that, since she used a stolen credit card to rent the vehicle, she did not lawfully obtain the rental vehicle under the theft by conversion statute.

> A person commits the offense of theft by conversion when, *having lawfully obtained funds or other property of another including, but not limited to, leased or rented personal property*, under an agreement or other known legal obligation to make a specified application of such funds or a specified disposition of such property, he

---

[5] See *Bryson v. State*, 316 Ga. App. 512 (729 SE2d 631) (2012); *Level v. State*, 273 Ga. App. 601, 602 (1) (615 SE2d 640) (2005).

[6] See *Bryson*, 316 Ga. App. at 512; *Level*, 273 Ga. App. at 602 (1).

knowingly converts the funds or property to his own use in violation of the agreement or legal obligation.[7]

By contrast, "[a] person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated."[8] And "[a] person commits the offense of theft by deception when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property."[9] The theft by taking statute is a "catch-all" statute that is "broad enough to encompass theft by conversion, theft by deception or any other of the myriad and even yet-to-be-concocted schemes for depriving people of their property."[10]

Still, to prove theft by conversion, the State must show that the defendant acted with fraudulent intent.[11] "It is the presence of a fraudulent intent that distinguishes

---

[7] OCGA § 16-8-4 (a) (emphasis supplied).

[8] OCGA § 16-8-2.

[9] OCGA § 16-8-3 (a).

[10] *Patterson v. State*, 289 Ga. App. 663, 665 (1) (658 SE2d 210) (2008) (punctuation and footnote omitted).

[11] See *Barrett v. State*, 207 Ga. App. 370 (427 SE2d 845) (1993).

5

theft by conversion from a simple breach of contract."[12] The purpose of the theft by conversion statute "is to punish fraudulent conversion, not breach of contract, and it is the requirement that the State prove fraudulent intent that prevents the statute from being unconstitutional."[13] Evidence that a defendant provided false information to obtain rented property will not defeat a conviction for theft by conversion, and, indeed, may be necessary to demonstrate fraudulent intent.[14]

We are aware of only two cases in which we have reversed a theft by conversion conviction because the defendant did not lawfully obtain the property. In *Callaway v. State*,[15] the defendant was a project director at a state college. Her project was funded by federal government grants to the college.[16] As project director, the

---

[12] Id. (citation and punctuation omitted).

[13] Id. (citation omitted).

[14] See *Terrell v. State*, 275 Ga. App. 501, 502-503 (621 SE2d 515) (2005) (holding that there was sufficient evidence of fraudulent intent after the defendant rented, but did not return, a wood chipper where the defendant provided a false address, provided a false phone number, and later fled the country); *Massalene v. State*, 224 Ga. App. 321, 323-324 (3) (480 SE2d 616) (1997) (holding that there was sufficient evidence of fraudulent intent after the defendant rented, but did not return, a vehicle where the defendant provided a false address, employer information, and a disconnected phone number).

[15] 165 Ga. App. 862 (303 SE2d 42) (1983).

[16] Id.

defendant was responsible for the publication of certain booklets and approving invoices from the printer to authorize payment.[17] The defendant was convicted of theft by conversion after she signed false invoices and received kickbacks from the printer company.[18] We reversed her conviction, holding that she was never in lawful possession of the funds from the college because "those funds were never in the possession, or under the control, of [the defendant] prior to their receipt by the printer."[19] Similarly, we reversed a conviction for theft by conversion where a city inspector received bribes in lieu of an inspection fee, because "the defendant was never in lawful possession of funds of the municipality[.]"[20]

On the other hand, we have rejected this type of argument when the defendant was authorized to control or possess the converted property. For example, we affirmed a conviction for theft by conversion where a prison guard stole an ATM card from a prisoner, because the guard "possessed the legal authority to remove the card

---

[17] Id.

[18] Id.

[19] Id. at 863.

[20] See *Partain v. State*, 129 Ga. App. 213, 214 (199 SE2d 549) (1973).

from its storage place at the jail."[21] We similarly affirmed convictions for theft by conversion after two city officials used city funds for personal purposes, because "both defendants had possession of and control over the city's four bank accounts by virtue of their offices as city clerk and city councilman, and they had the authority to disburse funds to pay the city's bills."[22]

In this case, Budget entered into a rental agreement with Shardow, providing Shardow with lawful possession of the vehicle.[23] Although Shardow gave a stolen card credit number to Budget, that evidenced Shardow's fraudulent intent, a necessary element to sustain the theft by conversion conviction.[24] Additionally, Budget did not charge the stolen credit card until after Shardow failed to return the vehicle.[25]

---

[21] *Moore v. State*, 146 Ga. App. 457 (1) (246 SE2d 353) (1978).

[22] *Collins v. State*, 170 Ga. App. 753 (1) (318 SE2d 492) (1984).

[23] See *Collins*, 170 Ga. App. at 753 (1); *Moore*, 146 Ga. App. at 457 (1); see also OCGA § 16-8-4 (a) (providing, as an example, "leased or rented personal property[ ]").

[24] See *Terrell*, 275 Ga. App. at 502-503; *Massalene*, 224 Ga. App. at 323-324 (3).

[25] See *Mason v. State*, 180 Ga. App. 235, 237 (2) (348 SE2d 754) (1986) (rejecting the defendant's argument that he always intended to defraud the victim and thus unlawfully obtained the victim's investment funds, because his fraudulent intent to convert the victim's funds did not manifest itself until the defendant used those funds to pay his personal debts).

8

Accordingly, the trial court did not err in denying Shardow's motion for a directed verdict on the theft by conversion charge.

2. Shardow argues that there was insufficient evidence to support her aggravated assault convictions against Swanson's son and Dixon. She contends that there was no evidence showing that she "specifically intended" to cause Swanson's son and Dixon injury.[26]

"A person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury[.]"[27] "[A]ggravated assault by means of a deadly weapon is not a specific intent crime. The [S]tate [is] only required to prove a general intent to injure[.]"[28]

> [A] conviction for aggravated assault also requires proof of a
> simple assault, which can be committed in two ways: (1) by attempting
> to violently injure someone; and (2) by doing something that places

---

[26] Shardow does not dispute on appeal whether there was sufficient evidence to support the jury's finding that she was a party to the aggravated assaults with Stripling.

[27] OCGA § 16-5-21 (a) (2).

[28] *Barnes v. State*, 296 Ga. App. 493, 495 (675 SE2d 233) (2009) (punctuation and footnote omitted).

another in reasonable fear that he or she is about to be violently injured. See OCGA § 16-5-20 (a) (1)-(2). Although the second form of simple assault is a general intent crime, meaning the State need only prove that the defendant intended to do the act that placed another in reasonable apprehension of immediate violent injury, the first method is a specific intent crime requiring proof that the defendant intended to violently injure someone.[29]

In this case, there was sufficient evidence showing that Stripling and Shardow "intended to violently injure someone."[30] Stripling intentionally fired bullets into an apartment occupied by three people. "[B]y intentionally firing into the home, [Stripling and Shardow] were likely to seriously injure all the occupants, not just their primary target[.]"[31] "When an unintended victim . . . is subjected to harm due to an unlawful act intentionally aimed at someone else . . . the law prevents the actor from taking advantage of his own misdirected wrongful conduct and transfers the original intent from the one against whom it was intended to the one who suffered harm."[32] "Such harm was likely regardless of whether a particular occupant . . . was aware of

---

[29] *Guyse v. State*, 286 Ga. 574, 577 (2) (690 SE2d 406) (2010).

[30] *Guyse*, 286 Ga. at 577 (2).

[31] *Culler v. State*, 277 Ga. 717, 720 (4) (594 SE2d 631) (2004).

[32] Id. (punctuation omitted).

10

the shooting as it occurred."[33] Accordingly, there was sufficient evidence to support the convictions of aggravated assault against Swanson's son and Dixon.[34]

*Judgment affirmed. Markle and Colvin, JJ., concur*.

---

[33] Id. (punctuation omitted).

[34] See id.