## A10A0088. ARNOLD v. THE STATE.

(695 SE2d 299)

PHIPPS, Presiding Judge.

Croff Bailey Arnold, convicted by a jury of two counts of aggravated assault and one count of aggravated battery,[1] appeals from the denial of his motion for new trial, contending that the trial court erred by failing to sua sponte charge the jury on his sole defense of accident and that his trial counsel rendered ineffective assistance by failing to request such a charge and by failing to move for a mistrial. Finding no error, we affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[2]

So viewed, the evidence showed that Arnold, Byron West, and Judy Spradlin were friends and that, in January 2004, West and Spradlin had been dating for approximately a year. On January 28,

---

[1] One count of aggravated assault (Count 2) and the aggravated battery count (Count 3) involved Byron West and one count of aggravated assault (Count 1) involved Judy Spradlin. Counts 2 and 3 were merged for purposes of sentencing.

[2] *Martinez v. State*, 278 Ga. App. 500 (629 SE2d 485) (2006) (citations omitted).

2004, Arnold asked West to repair his satellite dish, and West and Spradlin went to Arnold's camper for that purpose. While Arnold and West went to get tools to work on the satellite dish, Spradlin went to a grocery store to get a birthday cake to celebrate her and Arnold's birthdays. During this time, Arnold asked West if he loved Spradlin enough to die for her, and West responded affirmatively.

Spradlin returned and she, Arnold, and West went into the camper and ate cake. Then Spradlin went to the bathroom and, when she returned, Arnold told her he had put something in her drink and she had ten minutes to live. West and Spradlin thought Arnold was kidding and did not react. Then, Arnold said Spradlin had four minutes left and that she could leave and go to the hospital, but West would have to stay. After stating that one minute was left, Arnold grabbed his double barreled shotgun, pulled one of the hammers back, and asked who was first, West or Spradlin. Arnold then pointed the shotgun at Spradlin's chest, but West pushed the gun away. Arnold pointed it at Spradlin a second time and West again pushed the gun away. The third time Arnold pointed the shotgun at Spradlin, West pushed the gun away and also put his fingers in the end of the gun. The shotgun fired, causing West to lose his ring finger and the use of his middle finger. Spradlin's arm was grazed by the discharge and her pants were splattered with West's blood. Spradlin was terrified and thought she was going to die. West and Spradlin got into their car and Spradlin began driving toward the hospital. They were pulled over by a sheriff's deputy for speeding and an ambulance was summoned.

Arnold testified that he was trying to demonstrate West's commitment to Spradlin. While he acknowledged picking up the shotgun, Arnold said he only wanted to ask West something about the gun. Arnold thought the gun was unloaded and denied cocking and pointing it at anyone. Asked how the gun discharged, Arnold stated that "[West] pulled on it. It went off. It must have hit the hammer or something and pulled it back because the hammer was not cocked like they said." Arnold acknowledged that he had consumed a few beers during the day of the shooting. He also acknowledged picking up the shotgun without checking to see if it was loaded and standing in front of West and Spradlin with the shotgun.

While Spradlin was pulled over and waiting for the ambulance, she called Arnold on her cell phone and asked him why he did that. Arnold said "it was to prove a point but it backfired on me." When Arnold was arrested several hours following the shooting, he had two shotgun shells in his front pocket.

1. Arnold contends that, under the evidence set out above, the trial court was required to charge, sua sponte, on the defense of

accident, which he argues here was his sole defense.

To authorize a jury instruction on a subject, there need only be produced at trial slight evidence supporting the theory of the charge.[3] Whether the evidence presented is sufficient to authorize the giving of a charge is a question of law.[4]

Under OCGA § 16-2-2: "A person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence." Accordingly, unless there was evidence to support a finding that Arnold acted without any "criminal scheme or undertaking, intention, or criminal negligence," there was no error in the trial court not giving, sua sponte, a charge on the defense of accident.[5] The evidence showed that Arnold, having consumed alcohol and with the intent to show Spradlin that West would die for her, counted down the minutes until he picked up a shotgun and intentionally stood within a few feet of West and Spradlin. Arnold contends that, absent evidence that he pointed the gun at the victims or threatened them,[6] the jury could find that the gun accidentally discharged. Even if Arnold did not intentionally fire the shotgun, under the evidence in this case, his admitted acts constituted criminal negligence rendering the defense of accident inapplicable.[7]

2. In his second and third enumerations of error, Arnold argues that his trial counsel rendered ineffective assistance.

In order to prevail on a claim of ineffective assistance, Arnold must show that counsel's performance was deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different.[8] Further, Arnold must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. "The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the circumstances of the case."[9] "The fact that present counsel would pursue a different strategy does not render trial counsel's strategy unreasonable."[10] "In reviewing a

---

[3] *Koritta v. State*, 263 Ga. 703, 704 (438 SE2d 68) (1994).

[4] *Turner v. State*, 262 Ga. 359, 361 (2) (c) (418 SE2d 52) (1992).

[5] *Campbell v. State*, 263 Ga. 824, 825 (3) (440 SE2d 5) (1994).

[6] Both of these facts are amply demonstrated by the testimony of West and Spradlin.

[7] *Campbell*, supra at 825 (3); *Sumner v. State*, 210 Ga. App. 856-857 (2) (437 SE2d 855) (1993); *Keye v. State*, 136 Ga. App. 707, 708 (1) (222 SE2d 172) (1975). See also *Hill v. State*, 300 Ga. App. 210, 213 (1), n. 4 (684 SE2d 356) (2009).

[8] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782 (1) (325 SE2d 362) (1985).

[9] *Nhek v. State*, 271 Ga. 245, 247 (3) (517 SE2d 521) (1999) (citation omitted).

[10] Id. at 248 (3) (citation omitted).

lower court's determination of a claim of ineffective assistance of counsel, an appellate court gives deference to the lower court's factual findings, which are upheld unless clearly erroneous; the lower court's legal conclusions are reviewed de novo."[11]

(a) We first address Arnold's contention that failure of trial counsel to request a charge on accident amounted to ineffective assistance. Trial counsel testified during the motion for new trial hearing that he did consider whether such a charge would be appropriate to the facts of the case. Following consultation with his supervisor, he concluded that such a charge was inappropriate where the acts of Arnold were arguably criminally negligent. Trial counsel, instead, opted to argue lack of criminal intent.

In addition to our conclusion in Division 1 that a charge on accident was not demanded by the evidence, trial counsel's testimony represents some evidence that his decision not to request a charge on accident was a matter of reasonable trial strategy. Arnold failed to rebut the presumption that this strategy was reasonable, and accordingly he failed to support his claim of ineffective assistance.[12]

(b) Arnold also contends that his trial counsel was ineffective because he failed to move for a mistrial following testimony by a sheriff's deputy of Arnold's prior bad acts.

The deputy who had pulled over West and Spradlin testified that he had an encounter with Arnold several months prior to this incident. The deputy went to Arnold's residence and knocked on the door and identified himself several times. When the door was eventually opened, the deputy found Arnold sitting inside in a very intoxicated state. The deputy testified that Arnold said, "I'm glad you told me who you were. I was about to shoot you." Arnold's trial counsel objected on the ground that this evidence was irrelevant. The objection was sustained and, at the request of trial counsel, the jury was instructed to disregard this evidence.

Trial counsel testified at the motion for new trial hearing that he did not make a motion for mistrial once his objection was sustained and the jury instructed to disregard the testimony because he did not want to further focus the jury's attention on the testimony by doing so. Pretermitting the issue of whether trial counsel's decision not to move for a mistrial was one of reasonable trial strategy,[13] we find that

---

[11] *Bales v. State*, 277 Ga. 713, 715 (2) (594 SE2d 644) (2004) (citation omitted).

[12] *Greene v. State*, 295 Ga. App. 803, 810 (7) (673 SE2d 292) (2009); see also *Farris v. State*, 293 Ga. App. 674, 676 (667 SE2d 676) (2008) ("appellate courts are generally reluctant to reverse a case on the ground of ineffective assistance when the complaint urged can reasonably be construed as involving defense counsel's trial strategy") (punctuation omitted).

[13] See *Greene*, supra.

the evidence against Arnold was overwhelming and it is highly probable that the complained-of evidence did not contribute to the verdict.[14]

*Judgment affirmed. Miller, C. J., and Johnson, J., concur.*

DECIDED APRIL 23, 2010.

James D. Lamb, for appellant.

Peter J. Skandalakis, District Attorney, Sarahlouise S. Japour, Vincent J. Faucette, Assistant District Attorneys, for appellee.

---

[14] *Torres v. State*, 258 Ga. App. 393 (574 SE2d 438) (2002) (denial of motions for mistrial based on officers' testimony regarding defendant's prior bad acts and gang affiliations did not require reversal in light of overwhelming evidence of guilt).