**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

October 2, 2013

# In the Court of Appeals of Georgia

A13A1203. FLEMING v. THE STATE.

MILLER, Judge.

Following a jury trial, John Fleming was convicted of battery (OCGA § 16-5-23.1 (a)) and criminal damage to property in the second degree (OCGA § 16-7-23 (1)). Fleming appeals from the denial of his motion for new trial, contending that the evidence was insufficient to sustain his convictions, the trial court erred in failing to charge on justification as a defense to the crime of criminal damage to property, and that he received ineffective assistance of counsel. For the reasons that follow, we affirm.

"On appeal from a criminal conviction, the evidence is viewed in the light most favorable to the verdict." (Punctuation omitted.) *Philpot v. State*, 311 Ga. App. 486 (716 SE2d 551) (2011). So viewed, the evidence showed that the victim lived across

the street from Fleming in the Golden Estates Mobile Home Park located in Douglas County. The victim testified that Fleming would frequently play music from his car stereo at a high volume. At first, Fleming would only play loud music on the weekends, but later, he also began playing loud music in the morning during the work week. The victim, who usually got home from work around 4:30 a.m. and went to sleep at about 6:00 a.m., stated that Fleming's loud music would often wake him up around 8:00 a.m.

One morning in January 2007, the victim was awakened by loud music coming from Fleming's car. The victim became irritated and decided to move his truck onto the street directly in front of Fleming's driveway in order to block Fleming's car. About 15 minutes later, Fleming went to the victim's trailer and confronted the victim about his truck. Fleming told the victim to "move your f'ing truck," that he would bust the truck's windows if the victim refused, and then said, "Never mind, I'll move it myself."

Fleming then ran back to his trailer. The victim walked out the front door of his trailer and towards Fleming's trailer in order to keep an eye on Fleming. When the victim saw Fleming trying to pick up a brick, he thought Fleming was going to throw the brick at his truck. The victim then ran towards his truck in an attempt to move it

2

before Fleming damaged it. Just as the victim neared the driver's side rear door, Fleming threw a brick at the truck, hitting the front passenger door and step rail. The victim suffered more than $500 in damages to the truck.

Fleming and the victim then got into a heated argument, whereupon Fleming punched the victim in the face. The victim retreated to his truck, entered the driver-side door, and moved the truck back to his trailer. The victim then called the police and later received medical attention for his injuries, which included cuts on his nose and under his eye.

1. Fleming contends that the trial court erred by failing to charge the jury on justification as a defense to the offense of criminal damage to property in the second degree because it was his sole defense. We disagree.

Although Fleming refers to a "justification defense" in his brief, he cites to OCGA § 16-3-23, which is the statute that sets out the defense of habitation. While Fleming made a request for a charge on justification, he did not specifically request a charge on the defense of habitation and did not object to the court's instruction that the defense of justification had no relevance to the issue of criminal damage to

3

property.[1] Consequently, we review Fleming's enumeration of error only to determine whether the trial court's failure to include a specific instruction on defense of habitation constitutes plain error. See OCGA § 17-8- 58 (b) ("Failure to object . . . shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties[.]"); *Allen v. State*, 290 Ga. 743, 744-745 (3) (723 SE2d 684) (2012).

In determining whether plain error exists, we apply a four-part test. *Allen*, supra, 290 Ga. at 745 (3).

> First, there must be an error or defect – some sort of deviation from a legal rule – that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error – discretion which ought to be exercised only if the error seriously affects the fairness, integrity[,] or public reputation of judicial proceedings.

(Citation and punctuation omitted.) Id.

---

[1] Although trial counsel later reserved objections to the charge as discussed in the charge conference, the only objection made by counsel during the conference concerned an unrelated instruction.

Here, although Fleming argues that the trial court was required to charge on his sole defense, even without a request to charge, this requirement only applies where there is slight evidence supporting the theory of the charge. See *Arnold v. State*, 303 Ga. App. 825, 827 (1) (695 SE2d 299) (2010). OCGA § 16-3-23 provides that "[a] *person* is justified in threatening or using force *against another* when and to the extent that he or she reasonably believes that such threat or force is necessary to prevent or terminate *such other*'s unlawful entry into or attack upon a habitation[.]" (emphasis applied). The clear language of the statute states that the authorized use of force is to be directed against another person, not against property. Since there is no authority that the defense of habitation applies to the use of force against another person's property, Fleming cannot show that the trial court's failure to include an instruction on defense of habitation was a clear and obvious error.

Even if the habitation defense permitted the use of force against another person's property, as opposed to the person, the charge was nevertheless unwarranted.

> [C]ritical to the application of the defense of habitation is the moment in time at which the defendant resorts to [ ] force and the act being performed by the victim at that moment. . . . Where there is no evidence that the victim was attempting to enter or attack the habitation at the time he was injured by the defendant, the defense of habitation is not available.

5

(Citations and punctuation omitted.) *Coleman v. State*, 286 Ga. 291, 298 (6) (687 SE2d 427) (2009); see also *Fair v. State*, 288 Ga. 244, 254 (2) (a) (702 SE2d 420) (2010) ("[G]enerally the use of force in defense of habitation is justified only where there is an *unlawful* entry.") (emphasis in original). In this case, at the time Fleming threw the brick at the victim's truck, the victim was moving from his trailer towards his truck that was parked in front of Fleming's driveway in an attempt to move it. There was no evidence that the victim was attempting to enter or attack Fleming's habitation at the time Fleming threw a brick at the victim's truck. Indeed, Fleming testified at trial that the reason he threw the brick was to get the victim to move his truck. Therefore, the charge on defense of habitation was not warranted. See, e.g., *Coleman*, supra, 286 Ga. at 298 (6) (a); *Philpot*, supra, 311 Ga. App. at 489. Accordingly, the trial court did not err, much less plainly err, in failing to charge on the defense of habitation.

2. Fleming contends that the evidence was insufficient to support his convictions for battery and criminal damage to property in the second degree, arguing that his actions were justified under the circumstances. We disagree.

(a) "A person commits the offense of battery when he or she intentionally causes substantial physical harm or visible bodily harm to another." OCGA § 16-5-

6

23.1 (a). The term "visible bodily harm" means "bodily harm capable of being perceived by a person other than the victim and may include, but is not limited to, substantially blackened eyes, substantially swollen lips or other facial or body parts, or substantial bruises to body parts." OCGA § 16-5-23.1 (b).

In support of his argument that he was justified in his actions, Fleming cites his own trial testimony in which he stated that after the victim noticed the damage to his truck, the victim called Fleming a racial slur. Fleming testified that he and the victim then approached each other, that he ducked when the victim swung at him, and that he then punched the victim in self-defense.

> A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself against such other's imminent use of unlawful force. OCGA § 16-3-21 (a). But a person is not justified in using force in self-defense if he is the initial aggressor or engages in mutual combat, unless he withdraws from the encounter and notifies the other participant that he is doing so.

(Citation and punctuation omitted.) *Muckle v. State*, 307 Ga. App. 634, 637 (1) (a) (705 SE2d 721) (2011). Once evidence of self-defense is presented, the burden is on the State to disprove that defense beyond a reasonable doubt. Id. at 637 (1). The question of whether a defendant acted in self-defense is for the jury to resolve. *Holmes v. State*, 273 Ga. 644, 645 (1) (543 SE2d 688) (2001).

Viewed in the light most favorable to the verdict, the evidence was sufficient for the jury to conclude beyond a reasonable doubt that the State disproved Fleming's self-defense claim as to the battery offense. The victim's testimony alone was sufficient to support a finding that Fleming was the aggressor and that he punched the victim without provocation. See OCGA § 24-4-8 ("The testimony of a single witness is generally sufficient to establish a fact."). Although Fleming offered testimony that conflicted with the State's version of events, it was the role of the jury to assess the credibility of the witnesses and decide whose testimony to accept or reject. *Muckle*, supra, 307 Ga. App. at 638 (1) (a). As a result, the jury was authorized to conclude that Fleming's hitting of the victim was not justified as an act of self-defense. Furthermore, since there is evidence in the record showing that Fleming caused "visible bodily harm" to the victim, the jury was authorized to conclude that Fleming was guilty of the offense of battery. See, e.g., *Mack v. State*, 294 Ga. App. 518, 519 (669 SE2d 487) (2008) (upholding battery conviction where victim had marks and bruises as a result of defendant's actions); *Kuykendoll v. State*, 278 Ga. App. 369, 369-370 (1) (629 SE2d 32) (2006) (upholding conviction for family violence battery based on evidence that the victim suffered a nose bleed, bruises, a cut lip, and loosened teeth).

(b) OCGA § 16-7-23 (a) (1) provides that "[a] person commits the offense of criminal damage to property in the second degree when he . . . [i]ntentionally damages any property of another person without his consent and the damage thereto exceeds $500.00."

In this case, it is undisputed Fleming threw a brick at the victim's truck, and the evidence shows that Fleming's action caused over $500 in damages to the truck. While Fleming asserts that he was justified in throwing the brick in defense of his habitation, his claim is belied by his own trial testimony. Fleming testified that he threw the brick in order to get the victim to move his truck, and that the victim did not make any aggressive move until after the brick was thrown. Moreover, as indicated above in Division 1, the habitation defense did not apply because there was no evidence that the victim was attempting to enter or attack Fleming's habitation at the time Fleming threw the brick at the victim's truck. See, e.g., *Coleman*, supra, 286 Ga. at 298 (6) (a). As a result, the jury was authorized to convict Fleming of criminal damage to property in the second degree. See *Elsasser v. State*, 313 Ga. App. 661, 662 (1) (722 SE2d 327) (2011).

3. Fleming also contends that he received ineffective assistance of counsel.

To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. . . . *Strickland v. Washington*, 466 U.S. 668, 687 [104 SCt 2052, 80 LEd2d 674] (1984). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. Furthermore, there is a strong presumption that the performance of counsel was within the wide range of reasonable professional lawyering, and we cannot reach a contrary conclusion unless defendant successfully rebuts the presumption by clear and convincing evidence. Judicial scrutiny of counsel's performance must be highly deferential.

(Citations and punctuation omitted.) *Bridges v. State*, 286 Ga. 535, 537 (1) (690 SE2d 136) (2010). Applying these standards, we review Fleming's claims.

(a) Fleming contends that trial counsel was ineffective for failing to object to testimony that Fleming failed to keep an appointment with an internal affairs investigator regarding his complaint against the arresting officer. We disagree.

The arresting officer testified that upon responding to the 911 call, she spoke to the victim and Fleming separately before deciding to arrest Fleming. The internal affairs officer testified that following Fleming's arrest, he received a voice mail from Fleming indicating that he wanted to complain about the arresting officer. The

10

internal affairs officer testified that when he spoke with Fleming, Fleming described his version of the events leading up to the arrest and complained that the arresting officer arrested him only because he was black while the arresting officer and the victim were both white. The internal affairs officer spoke to Fleming a second time in an attempt to get Fleming to come into the police department to discuss the complaint further. Fleming stated that he would not be able to meet due to a medical condition and indicated that he might be able to meet at a later time. The internal affairs officer subsequently called Fleming and made an appointment to meet him, but Fleming failed to appear. The internal affairs officer never heard from Fleming again.

Fleming argues that the testimony regarding his failure to show up at the appointment with the internal affairs investigator constituted an improper comment on his right to remain silent. In this case, however, Fleming freely spoke to the internal affairs investigator, as well as the arresting officer, and there is no evidence that he ever expressly invoked his right to remain silent. Moreover, Fleming testified that he declined to show up at the appointment because he did not think it would be worthwhile. not because he wanted to remain silent. Under these circumstances, the testimony about Fleming's failure to appear for the interview did not amount to an impermissible comment on his right to remain silent. See, e.g., *Curry v. State*, 291 Ga.

11

446, 451 (3) (729 SE2d 370) (2012) (since the defendant did not invoke his right to remain silent during a police interview, testimony regarding his failure to respond to particular questions during interview was admissible); *Gilyard v. State*, 288 Ga. 800, 802 (2) (708 SE2d 329) (2011) (where defendant spoke with police without ever invoking his right to remain silent, questions from the prosecuting attorney about why he had not come forward sooner "did not constitute impermissible commentary on [his] right to remain silent") (citations omitted). Consequently, an objection to the testimony at issue would have been futile, and the failure to make a meritless objection to the admission of certain evidence does not constitute deficient performance of counsel. *Wesley v. State*, 286 Ga. 355, 356 (3) (a) (689 SE2d 280) (2010).

(b) Fleming also contends that trial counsel was ineffective for failing to call witnesses that would have corroborated his testimony that there were no complaints made against him for playing loud music. We have previously held, however, that the failure to present cumulative evidence through additional witness testimony does not amount to ineffective assistance of counsel. See, e.g., *Gibbs v. State*, 316 Ga. App. 431, 432 (729 SE2d 563) (2012); *Duran v. State*, 274 Ga. App. 876, 879 (3) (619 SE2d 388) (2005).

(c) Fleming also argues that his trial counsel was ineffective for failing to move to dismiss on constitutional speedy trial grounds. We disagree.

To demonstrate that trial counsel was ineffective on this ground, Fleming

must show that the motion to dismiss would have been granted had it been filed. When considering a motion to dismiss on speedy trial grounds, the trial court must conduct a two-part test as set forth in the United States Supreme Court decisions in *Barker v. Wingo*, 407 U. S. 514, 530 [92 SCt 2182, 33 LEd2d 101] (1972), and *Doggett v. United States*, 505 U. S. 647, 651-652 [112 SCt 2686, 120 LEd2d 520] (1992). First, the trial court must determine whether the interval from the defendant's arrest, indictment, or other formal accusation to trial is sufficiently long to be considered "presumptively prejudicial." If the delay is presumptively prejudicial, the trial court must determine whether the defendant has been deprived of his right to a speedy trial by analyzing a four-part balancing test that considers (1) the length of the delay, (2) the reason for the delay, (3) the assertion of the defendant of his right to a speedy trial, and (4) prejudice to the defendant.

(Citations and punctuation omitted.) *Chalk v. State*, 318 Ga. App. 45, 48 (1) (c) (733 SE2d 351) (2012).

(i) *Presumptive prejudice.* "Speedy trial rights attach at the time of arrest or formal indictment, whichever is earlier." (Citation and punctuation omitted.) *Stewart v. State*, 310 Ga. App. 551, 553 (1) (713 SE2d 708) (2011). Here, Fleming was arrested in January 2007 and went to trial in June 2009. The 29-month delay was

13

presumptively prejudicial. See *Ditman v. State*, 301 Ga. App. 187, 189-190 (1) (687 SE2d 155) (2009) (a pretrial delay exceeding 12 months is presumptively prejudicial).

(ii) *Length of the delay*. The 29-month pretrial delay in this case was uncommonly long, and is a factor weighed against the State. See *Ruffin v. State*, 284 Ga. 52, 57-59 (2) (b) (i) (663 SE2d 189) (2008) (delay of over 26 months weighed against State).

(iii) *Reasons for the delay*. The record reveals that after the indictment was filed in March 2007, the case was assigned to three different prosecutors after the first two prosecutors left the district attorney's office. Trial counsel testified at the motion for new trial hearing that he had announced ready for trial at several calendar calls, and that part of the delay was attributable to the trial court's volume and backlog. Based on this evidence, the delay must be weighed against the State, but not too heavily. See *Ruffin*, supra, 284 Ga. at 60 (2) (b) (ii) (overcrowded dockets, the State's failure to provide sufficient prosecutors, and neglect by the prosecution are factors that weigh against the State though less heavily than delay designed to sabotage the defendant's case).

(iv) *Assertion of the right*. Trial counsel testified that during the time that the case was reassigned to different prosecutors, he continued to pursue plea deals with

14

each prosecutor. Trial counsel further testified that he advised Fleming to accept this plea offer at numerous trial calender calls, and when it became clear that Fleming would not accept the plea offer,[2] he filed a speedy trial demand on Fleming's behalf in March 2009, approximately 26 months after Fleming was arrested. The 26-month delay in requesting a speedy trial is weighed against Fleming. See *Nealy v. State*, 246 Ga. App. 752, 754 (3) [3] (542 SE2d 521) (2000).

(v) *Prejudice to Fleming's defense.* The most important *Barker-Doggett* factor whether the pre-trial delay harmed the defendant. See *Over v. State*, 302 Ga. App. 215, 218 (4) (690 SE2d 507) (2010).

> The right to a speedy trial is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself. Of these forms of prejudice, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

(Citations and punctuation omitted.) Id.

---

[2] Trial counsel ultimately negotiated a plea offer that would dismiss all felony counts against Fleming in exchange for his guilty plea to one misdemeanor charge of criminal trespass as a lesser included offense of criminal damage to property in the second degree with a recommended sentence of 12 months probation. Trial counsel explained that he advised Fleming to accept this plea offer because he did not have a legal defense to charge of criminal damage to property in the second degree.

Fleming asserts only that his defense was impaired by the delay because a material witness was unavailable to testify. Trial counsel testified at the motion for new trial hearing that he was unaware of any material witnesses that had gone missing or were unavailable on account of the delay. Fleming testified that he told trial counsel that no complaints had been made against him, and argues that the former manager of the Golden Estates Mobile Home Park would have been able to definitively testify as to whether any noise complaints had been made against Fleming prior to the incident in question.[3] Fleming did not proffer the former manager's testimony, as he submitted only that the manager could "definitively testify" without providing details about what the evidence would show or how this testimony would have benefitted his defense. See *Chalk*, supra, 318 Ga. App. at 49-50 (1) (c) (v) (defendant failed to show actual prejudice where he did not provide details about how missing witness's anticipated testimony would have benefitted the defense). At best, the former manager's testimony would have merely corroborated Fleming's trial

---

[3] The former manager's employment with Golden Estates Mobile Home Park ended in December 2008, about a year after the date of the offense and almost seven months prior to trial. The manager's replacement testified at the motion for new trial hearing that while there were no business records of any complaints having been filed against Fleming for playing loud music, she acknowledged that the former manager was replaced, in part, because she failed to maintain adequate records.

testimony that there were never any noise complaints filed against him by fellow neighbors.[4] See *Ingram v. State*, 280 Ga. App. 467, 471 (1) (d) (634 SE2d 430) (2006) (defendant failed to establish prejudice as a result of missing witness where witness's testimony would have been either cumulative or not material). In light of the substantial evidence of guilt, including Fleming's own trial testimony, Fleming "has not shown any other circumstance from which it can be concluded that he is substantially prejudiced by the unavailability of the [former manager], or that the [absent] witness'[s] testimony was uniquely vital to his defense." (Citations and punctuation omitted.) *Over*, supra, 302 Ga. App. at 219 (4).

(vi) Balancing the *Barker–Doggett* factors, the length of and reasons for the delay weigh against the State. Fleming's failure, however, to assert his constitutional right to a speedy trial for 26 months, and the failure to establish actual prejudice from the delay are weighed against him. As a result, Fleming has failed to establish that the 29-month delay violated his constitutional right to a speedy trial. Therefore, even if trial counsel was deficient for failing to raise the speedy trial claim, Fleming cannot

[4] While Fleming argues that the former manager's testimony would have impeached the victim's testimony, the victim testified that he never made a complaint to the manager of the mobile home park. While the victim testified that his wife made a complaint against Fleming, she was not a eyewitness to offenses of battery and criminal damage to property in the second degree.

17

demonstrate that this failure prejudiced his defense, and his ineffective assistance claim on this ground fails. See *Chalk*, supra, 318 Ga. App. at 50 (1) (c) (v); *Nealy*, supra, 246 Ga. App. at 755 (3).

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*