**FIRST DIVISION
BARNES, P. J.,
BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**September 15, 2022**

# In the Court of Appeals of Georgia

A22A0996. FREEMAN v. THE STATE.

HODGES, Judge.

Following a domestic violence incident involving his girlfriend, a jury found Morrio Freeman guilty of aggravated battery-family violence, four counts of aggravated assault-family violence,[1] possession of a knife during the commission of a felony, terroristic threats, making a false statement, influencing a witness, possession of a firearm by a convicted felon, possession of cocaine, violation of a protective order, hindering an emergency telephone call, and obstruction of an officer. Freeman appeals from the trial court's denial of his out-of-time motion and amended

---

[1] These counts were merged, and Freeman was sentenced accordingly.

motion for new trial.[2] He argues that the evidence was insufficient to sustain his convictions, and that the trial court erred in admitting evidence of his prior acts pursuant to OCGA § 24-4-404 (b). For the reasons that follow, we affirm.

Viewed in the light most favorable to the verdicts,[3] the evidence adduced at trial shows that the victim and Freeman were married, and that they "sometimes" lived together in Porterdale, Georgia, at "his residence." Although the victim had taken out a temporary protective order against Freeman after an incidence of domestic violence occurring shortly after their marriage, which remained in effect at the time of the crimes, Freeman continued to contact her, and the victim began staying with Freeman again "on and off."

In July 2018, Freeman contacted the victim at work and told her he had gotten into an argument with someone, that "there was shooting in the air or shooting at each other," and that he wanted her to come home to calm him down. The victim had seen him with a gun previously. She left work early, went to the house in Porterdale and knocked on the door, but he was not there, as he was apparently still next door where

---

[2] It is unclear whether a hearing was held on the motion for new trial; the record contains no transcript of such a hearing.

[3] *Jackson v. Virginia*, 443 U. S. 307, 319 (3) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2

the altercation was taking place. When he returned home, the pair got into an argument about whether she could spend money on shoes for her daughter. Freeman eventually went out to a bar with some neighbors, and the victim decided to take a shower at the house. Freeman returned to the house, but realized he could not find his phone and wallet. He began saying "mean things, bad language" to the victim, calling her "a b–tch" and telling her to "find [his] stuff, get the f-ck up . . .," and he hit the victim "a couple of times." Eventually, his phone and wallet were found in the neighbors' car. As the pair walked back from the neighbors' house, Freeman told the victim how much he hated her and her family, and that he planned to cut the brake line on her mother's car. When they arrived back at the house, the victim testified that Freeman began "nutting up" and continuing the abuse.

The victim testified, generally, that she recalled Freeman hitting, spitting on, and biting her, as well as strangling her twice to the point of unconsciousness, and that he also attempted to strangle her at other points during the incident, although not to the point that she blacked out. As will be outlined in more detail below, the jury was shown photographs of and heard testimony that the victim was strangled, had bruising and contusions on her neck and face, swelling and bruising around her eyes,

ruptured blood vessels in her eyes from the strangulation, a concussion and nasal bone fracture, cuts and scratch marks, and bruising to her right wrist and forearm.

The victim testified extensively about the abuse, explaining that what happened was so traumatic that she could not recall the exact timing of the events. As she testified, "so much is happen[ing] I don't remember, you know, what exact order . . . I just know it was hell." On appellate review, of course, we view the evidence in the light most favorable to the jury's verdict. *Jackson*, 443 U. S. at 319 (3).

The victim testified that, early in the incident, Freeman tore her clothes off. leaving her naked. He also "snatched" her phone, preventing her from calling 9-1-1. She recalled being "down on the bed and he was strangling me and I passed out and when I came back to, he was punching me on my face and spitting on me." When she got up, he threw a drink on her and threw the remote control at the television. In another strangling incident, she testified, "I remember [him] having a knife over me when I was down on the bed and he was choking me and coming down like he was going to stab me in my eye and he was all over my face. . . . He was over me and he come down with a knife like really fast and before he would get to my eye he would hit me with his elbow." She testified that he pulled her up off the bed and began

4

choking her from behind. "I knew if I didn't fight back I was going to die[,]" she testified. She was so frightened that she urinated on herself. She testified that "when I started pulling his hand away from my throat, he told me I was going to die because I was going to try[] to fight him back . . .." When Freeman dropped the knife to reach for a bow and arrow, the victim grabbed the knife. She remembered "coming up off and hitting him the first time in his neck and then I blacked out . . . [a]nd then I came back to and he was still on top of me" and was biting her shoulder. The victim testified that she had stabbed him in self defense, and evidence adduced at trial showed that Freeman had stab wounds on the side of his right arm, his neck and shoulder, as well as a "slight cut" on his hand.

After the victim stabbed him, Freeman pulled her up off the floor, asking, "[H]ow did it get this far?" She tried to run away from him, fleeing out the back door as he chased her. As she tried to open the back gate, he came up behind her and pulled her back. He then forced her into the shower to try to wash the blood off of both of them, and forced her to put their clothes in the washer. Freeman's arm was bleeding badly, and he told the victim to tie it up with a towel or blanket. He then returned the phone he had taken from her so that she could call his relatives to "get *him* some help." (Emphasis supplied.)

5

His sister came, and the victim testified that "[h]e was able to walk to the vehicle . . . [w]e didn't tote him. He walked." He later, however, was life-flighted to a hospital. Although Freeman had wanted the victim to go to the hospital with him, she got into her own car and drove to her grandparents' home where she "sat there for hours and just rocked, for hours just rocked."

1. Freeman contends, generally, that the evidence was insufficient to sustain his convictions. We disagree.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence. We determine only whether the evidence authorized the jury to find the defendant guilty beyond a reasonable doubt, and in so doing we neither weigh that evidence nor judge the credibility of the witnesses. To support a conviction based on circumstantial evidence, the evidence "shall not only be consistent with the hypothesis of guilty, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6.

(Citation and punctuation omitted.) *Nix v. State*, 354 Ga. App. 47, 49 (1) (839 SE2d 687) (2020). It is well settled that "[n]ot every hypothesis is reasonable, and the evidence does not have to exclude every conceivable inference or hypothesis[.]" (Citation and punctuation omitted.) Id.

(a) Freeman first argues that he raised the justification defense of self defense to the portion of the indictment charging him with "disfiguring [the victim's] face[,]" and that the State failed to show beyond a reasonable doubt that he was not acting in self defense. Only Count 1 of the indictment appears to align with Freeman's contention of error, as it charges him with aggravated battery by "disfiguring [the victim's] head" pursuant to OCGA § 16-5-24.[4]

"When a defendant effectively raises an affirmative defense such as self-defense the State bears the burden of disproving the asserted defense beyond a reasonable doubt." *Mosby v. State*, 300 Ga. 450, 451 (1) (796 SE2d 277) (2017). Freeman argues that the evidence was insufficient to disprove that he acted in self-defense.

As to the elements of the crime of aggravated battery, the victim testified that after she passed out from Freeman's attempt to strangle her, she woke to find him "punching [her] on [her] face and spitting on" her. Dr. Jennifer Utley, the physician who cared for the victim at the hospital and who also was qualified as an expert

---

[4] OCGA § 16-5-24 (a) provides, in pertinent part, that "[a] person commits the offense of aggravated battery when he or she maliciously causes bodily harm to another by . . . seriously disfiguring his or her body of a member thereof." See also OCGA § 16-5-24 (g) (providing sentencing range where the offense of aggravated battery is committed between, inter alia, past or present spouses).

witness in emergency medicine, testified that the victim had contusions and "significant bruising on her face," a "great deal of swelling" around her right eye, a subconjunctival hemorrhage from a ruptured blood vessel causing bleeding in the white of the left eye, bruising around both eyes, bruising on her neck consistent with being choked, a concussion, and a nasal bone fracture. The jury saw photographs of the victim's facial and head injuries.

Freeman does not argue that the evidence was insufficient to prove the elements of the crime of aggravated battery itself.[5] Rather, Freeman argues that the evidence was insufficient to support his aggravated battery conviction because the State failed to show beyond a reasonable doubt that he was not acting in self defense. He contends that the victim stabbed him multiple times and that his injuries "appear to have been more severe" than hers as he was life-flighted to a hospital while the victim did not seek medical attention until the day after the incident, where she was diagnosed with facial fractures and "popped" blood vessels in her eyes because

---

[5] See *Penland v. State*, 229 Ga. 256, 257 (1) (190 SE2d 900) (1972) (affirming sufficiency of the evidence of aggravated battery where victim's head was bloody, she suffered cuts and bruises, and her eyes were swollen shut); *Jones v. State*, 329 Ga. App. 439, 444 (1) (a) (765 SE2d 639) (2014) (affirming sufficiency of the evidence of aggravated battery where victim did not sustain facial fractures but temporarily lost consciousness, had severe swelling and bruising to her eyes, had "marks" on her jaw, neck, and earlobe, as well as cuts in the eye area).

Freeman tried to strangle her. On the day of the incident, he argues, the victim drove past a police officer without seeking help. He also argues that because he had a stab wound on the back of his neck it is "more likely" that the victim was the "aggressor."

The victim, however, told a police officer that she stabbed Freeman in self defense. She testified that Freeman had the knife first, that he was pinning her down on the bed, choking her, and stabbing the knife quickly toward her face as if he would gouge her eye, then at the last moment, hitting her with his elbow. He was strangling her, and when she tried to pull his hand away from her throat, he told her she "was going to die." When he dropped the knife and turned to grab a bow and arrow, she grabbed the knife, knowing that "if I didn't fight back I was going to die and *he kept telling me I was going to die*." (Emphasis supplied.) The victim testified that she remembered "hitting him the first time in his neck and then I blacked out." She testified that while she saw a police officer as she was fleeing from Freeman, she was too afraid to flag down the officer.

By contrast, two law enforcement officers testified that Freeman told them he was walking home from Burger King and was stabbed when he was jumped during a robbery. Officers investigated the outdoor location where he said the stabbing took

9

place and found no blood. The officers learned that the victim had stabbed Freeman when she told them, in an interview, that she did so in self defense.

> A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself against such other's imminent use of unlawful force. OCGA § 16-3-21 (a). But a person is not justified in using force in self-defense if he is the initial aggressor or engages in mutual combat, unless he withdraws from the encounter and notifies the other participant that he is doing so.

(Citation omitted.) *Fleming v. State*, 324 Ga. App. 481, 485 (2) (a) (749 SE2d 54) (2013). Further, "[t]he question of whether a defendant acted in self defense is for the jury to resolve." Id. "The testimony of a single witness is generally sufficient to establish a fact." OCGA § 24-14-8.

Here, given that the victim testified that she was unconscious and awoke to find Freeman punching her face, spitting on her, and telling her that she would die, and that Freeman had the knife first, the jury was authorized to find that Freeman was the aggressor. Further, the evidence showed Freeman had strangled the victim to the point of unconsciousness, had punched and spit on her, had threatened her with a knife, and was reaching for a bow and arrow, all before she took up the knife to stab

10

him, all authorizing the jury to find that the Freeman was not acting in self defense. See *Fleming*, 324 Ga. App. at 485 (2) (a); see also *Nix*, 354 Ga. App. at 49 (1).

(b) Freeman contends that the evidence was insufficient to sustain his conviction for possession of cocaine by summarily asserting that the victim had equal access to the cocaine in the home. We find no error.

OCGA § 16-13-30 (a) provides in pertinent part that: "[I]t is unlawful for any person to purchase, possess, or have under his or her control any controlled substance." Cocaine is a controlled substance. OCGA § 16-13-26 (1) (D). Under Georgia law, "a person who knowingly has direct physical control over a thing at a given time is in actual possession of it. A person who, though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control of a thing is then in constructive possession of it." (Citation and punctuation omitted.) *Meridy v. State*, 265 Ga. App. 440, 441 (1) (594 SE2d 378) (2004). If, as in the instant case,

> the State presents evidence that a defendant owned or controlled premises where contraband was found, it gives rise to a rebuttable presumption that the defendant possessed the contraband. This presumption may be rebutted by evidence that someone other than the defendant had equal access to the specific place where the contraband was found, but whether the defendant presented sufficient evidence to

11

establish equal access is a jury question. [H]aving heard evidence in support of [Freeman's] equal access theory, the jury was authorized to reject it.

(Citations and punctuation omitted.) *Thomas v. State*, 342 Ga. App. 310, 312 (1) (803 SE2d 131) (2017) (affirming trial court's finding of guilt, despite defendant's assertion that an ex-boyfriend and a family friend staying in her bedroom had equal access to methamphetamine found in her dresser); accord *Nix*, 354 Ga. App. at 50 (1) (affirming conviction where State presented evidence of possession tying defendant to a flash drive containing child pornography where, among other things, the flash drive was found in Nix's garage in a fanny pack, and his cell phone was found in a similar fanny pack in the same location).

Here, the State presented evidence specifically tying Freeman to the cocaine such that a reasonable jury could conclude that he possessed the cocaine. The police found cocaine on Freeman's night stand next to his wallet. While the victim testified that Freeman left her at the house alone, and that she knew about and had access to the cocaine, she also testified that she "didn't bother it. He kept it in a jar." She further testified that the cocaine was not hers, but belonged to Freeman. Freeman's argument here rests on the flawed presumption that, to convict him of possession, the

12

State was required to prove he had sole constructive possession of the cocaine. See generally *Maddox v. State*, 322 Ga. App. 811, 815 (2) (746 SE2d 280) (2013) (finding, in context of contraband found in automobile where there was evidence that multiple occupants had equal access to contraband, that this could support the theory that all occupants had constructive possession and were guilty as parties to the crime, although the State could elect whether or not to prosecute all occupants, and finding "no basis . . . that the State is required under these circumstances to prove that the prosecuted occupant had sole constructive possession of the contraband").

"[E]qual access provides no defense where, as here, the evidence shows that the person who had equal access was in joint constructive possession of the contraband." (Citation omitted.) *Delavega v. State*, 312 Ga. App. 79, 80 (717 SE2d 681) (2011); see also *Nix*, 354 Ga. App. at 50 (1). Here, "whether the evidence of equal access is sufficient to rebut any inference of possession arising from discovery of drugs in the defendant's bedroom is a question properly left to the jury." (Citation and punctuation omitted.) *Thomas*, 342 Ga. App. at 313 (1). Further, the jury was properly instructed on Freeman's equal access defense, and on the law of types of possession of cocaine. We conclude that the jury was authorized to conclude beyond

13

a reasonable doubt that Freeman possessed the cocaine; thus, his challenge to the sufficiency of this evidence fails.

(c) Freeman briefly contends that no evidence supports his conviction for hindering an emergency telephone call (OCGA § 16-10-24.3).[6] Although his appellate brief asserts certain "facts" and "testimony" relevant to this contention, he provides no record citations related to any supporting evidence, does not discuss the elements of the crime, and cites to no related, on-point legal authority. "[U]nder the rules of this Court, an appellant must support enumerations of error with argument and citation of authority, and mere conclusory statements are not the type of meaningful argument contemplated by our rules." (Citations and punctuation omitted). *Gunn v. State*, 342 Ga. App. 615, 623-624 (3) (804 SE2d 118) (2017). Freeman has abandoned[7] this claim of error.

---

[6] OCGA § 16-10-24.3 provides that: "Any person who verbally or physically obstructs, prevents, or hinders another person with intent to cause or allow physical harm or injury to another person from making or completing a 9-1-1 telephone call or a call to any law enforcement agency to request police protection or to report the commission of a crime is guilty of a misdemeanor . . . ."

[7] See *Woody v. State*, 229 Ga. App. 823, 824 (1) (494 SE2d 685) (1997) (holding that we do not evaluate unsupported arguments on a defendant's behalf because "it replaces the defendant's or his attorney's scrutiny of the trial record with an appellate court's cursory review of the record for clear and grave injustice")

(d) Freeman presents no argument and provides no citations to the record or to legal authority related to the sufficiency of the evidence underlying his convictions for the remaining 11 counts of which he was convicted. In this enumeration, he does not mention the counts of aggravated assault-family violence, possession of a knife during the commission of a felony, terroristic threats, making a false statement, influencing a witness, possession of a firearm by a convicted felon, violation of a protective order, or obstruction of an officer.

"Despite arguing the evidence was insufficient to support all of his convictions, [defendant] does not discuss any [remaining] particular conviction, their respective elements, or the evidence supposedly lacking at trial." *Carr v. State*, 363 Ga. App. 35, 36 (1) (870 SE2d 531) (2022). This is a clear violation of Court of Appeals Rule 25 (c) (2), (3). Freeman has abandoned any attempt to assert error as to the sufficiency of the evidence underlying the above-referenced convictions.

> In reaching the foregoing conclusion, we acknowledge the significant liberty interests at stake when reviewing the sufficiency of the evidence to support a conviction. Nevertheless, the Supreme Court of Georgia recently discontinued its practice of examining such claims when the issue is neither briefed nor meaningfully argued on appeal. In doing so, our Supreme Court advised that "it is almost always a better course to decide the appeal the parties bring us, rather than the appeal we might

15

have brought were we in counsel's shoes."[8] Lastly, and particularly relevant here, failing to acknowledge that an appellate attorney filed an insufficient brief in a criminal case may frustrate future habeas corpus review. Thus, we decline to evaluate this abandoned claim of error on the merits.

(Citations and punctuation omitted.) *Carr*, 363 Ga. at 37-38 (1).

2. Freeman argues that the trial court erred in admitting evidence of "other acts" he committed against his mother and an ex-girlfriend pursuant to OCGA § 24-4-404 (b) ("Rule 404 (b)"). We find no error.

Prior to trial, the State gave notice that it intended to introduce evidence showing Freeman had pled guilty to aggravated assault and possession of a firearm during the commission of a crime in an incident involving his mother, and that he had pled guilty to, inter alia, battery and terroristic threats in an incident involving his ex-girlfriend. The State sought to introduce the evidence to show motive and intent, arguing that the prior incidents of violence against his mother and ex-girlfriend showed Freeman's motive and intent to control family members and intimate partners with violence. The trial court ruled the evidence admissible for those purposes, and also sua sponte found the evidence admissible to show absence of mistake or

---

[8] Citing *Davenport v. State*, 309 Ga. 385, 396 (4) (b) (846 SE2d 83) (2020).

16

accident. The trial court gave the jury limiting instructions, and both women testified at trial.

Freeman's mother testified that during an argument with her son when she refused to give him cigarettes, he fired a gun over her head as she stood near her bed. Freeman's ex-girlfriend testified that during an argument about a friend she wanted to spend time with, he hit her with his fist, refused to let her leave and when she tried to flee in her car, broke her windshield, followed her into the car with her two-year-old child, busted her lip, knocked her tooth out, threw her on the ground, choked her till she "blanked out," and "took off with [her] phone." Freeman entered guilty pleas to aggravated assault, possession of a firearm during the commission of a felony, felony terroristic threats, battery, hindering an emergency telephone call, and other charges related to these incidents. He now argues that the trial court erred in admitting this evidence to show motive, intent, and absence of mistake or accident because the other acts evidence was not relevant for those purposes, amounted to improper character evidence, and was prejudicial.

OCGA §§ 24-4-403 and 24-4-404 govern the admission of this evidence. OCGA § 24-4-404 (b) provides:

Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

However, under OCGA § 24-4-403 ("Rule 403"), even relevant evidence offered for a proper purpose may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

To evaluate the admissibility of other acts evidence, we apply a three-part analysis: "(1) the evidence must be relevant to an issue other than defendant's character; (2) the probative value must not be substantially outweighed by its undue prejudice; and (3) the government must offer sufficient proof so that the jury could find that defendant committed the act." (Citation and punctuation omitted.) *Chambers v. State*, 351 Ga. App. 771, 775 (2) (833 SE2d 155) (2019).

As to the first factor, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." As to the second factor, even if Rule 404 (b)

18

evidence is relevant, we must still decide whether "the probative value of the other acts evidence is substantially outweighed by its unfair prejudice, i.e., the evidence must satisfy the requirements of Rule 403.

(Citations omitted.) Id. at 775-776 (2). We review the admission of other acts evidence for a clear abuse of discretion. Id. at 776 (2). Freeman has not argued that the third factor – proof sufficient for the jury to find that defendant committed the act – was not satisfied. As a result, we examine only the first and second factors which Freeman raises on appeal.

(a) *Relevance*. Here, the trial court admitted the other acts evidence to show, inter alia, Freeman's motive for the crimes against the victim. "Evidence of another crime may be admitted to show the defendant's motive for committing the crime with which he is charged, but not to demonstrate a propensity to act in accordance with the character indicated by that other crime or conduct." (Citations and punctuation omitted.) *Harris v. State*, 338 Ga. App. 778, 781 (792 SE2d 409) (2016). The Supreme Court of Georgia has defined motive as "the reason that nudges the will and prods the mind to indulge the criminal intent." (Citation and punctuation omitted.) *Bradshaw v. State*, 296 Ga. 650, 657 (3) (769 SE2d 892) (2015).

Even where motive is not an element of the charged offenses, this Court has found that other acts evidence is "relevant to shed light on why [a defendant] reacted as he did when the victim did not acquiesce" to his demands. *Harris*, 338 Ga. App. at 781. In the instant case, the victim testified that Freeman choked and hit her, acted as if he would gouge her eyes out with a knife, took her phone away, and prevented her from leaving after the two could not agree on spending money to get shoes for her daughter. The other acts evidence came from Freeman's mother, who testified that her son fired a gun near her head when she refused to give him her cigarettes, and from Freeman's ex-girlfriend, who testified that he choked her, punched her, prevented her from leaving, and took her phone when she tried to call for help after the two argued about whether she could spend time with a friend.

> Thus, the other acts evidence showed [Freeman's] willingness to use physical violence against female victims whom he knew in an attempt to intimidate them or bend them to his will when they did not accede to his demands or were otherwise acting against his wishes. Accordingly, the evidence was relevant for the permissible purpose of showing the impetus behind [Freeman's] action[s].

*Harris*, 338 Ga. App. at 781 (other acts evidence relevant to show appellant's motive to use physical violence to control women who denied him something he wants, and

20

why he hit victim when she refused his sexual advances, where other acts evidence showed he hit his estranged wife when she refused to go to a restaurant with him, and poked his sister-in-law in the face, pulled her hair and twisted her arm when she attempted to help his wife); *Smart v. State*, 299 Ga. 414, 418 (2) (a) (788 SE2d 442) (2016) (evidence of other acts of domestic violence against appellant's ex-wife admissible to show that control was the impetus behind his violent behavior in malice murder trial based on beating death of his then-wife); *Anthony v. State*, 298 Ga. 827, 832-833 (4) (785 SE2d 277) (2016) (evidence of other acts such as cutting wife's tires and threatening victim with gun were admissible in murder trial to show "appellant's desire to take revenge and to provoke confrontation in response to his wife's affair with victim" and to counter his "theory of self-defense"); *Chambers*, 351 Ga. App. at 776 (2) (evidence of earlier conviction for family violence battery against prior girlfriend, and testimony from officer who observed her injuries and to whom appellant admitted striking prior girlfriend was relevant to show appellant's motive to use violence to assert control after being challenged by current girlfriend about his drug use). In Freeman's case, the other acts evidence was particularly relevant given his claim of self defense and his assertion that the victim was the aggressor. Thus, the

evidence was relevant to the State's goal of showing that Freeman's motive for striking the victim was not self defense.

(b) *Probative Value v. Prejudicial Effect*: Under this factor,

> if the evidence is found relevant, the evidence is subject to the balancing test set forth in Rule 403 to determine whether its admission is more probative than prejudicial. But, Rule 403 is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence. And, in close cases, balance under Rule 403 should be struck in favor of admissibility.

(Citations and punctuation omitted.) *Cross v. State*, 354 Ga. App. 355, 362-363 (2) (b) (839 SE2d 265) (2020).

Freeman argues that the prejudicial effect of the evidence outweighed any probative value because his prior acts are so similar to those in the instant case. Our Supreme Court has explained that, "[g]enerally speaking, the greater the tendency to make the existence of a fact more or less probable, the greater the probative value." *Olds v. State*, 299 Ga. 65, 75 (2) (786 SE2d 633) (2016). And "the extent to which evidence tends to make the existence of a fact more or less probable depends significantly on the quality of the evidence and the strength of its logical connection to the fact for which it is offered"; "how much it adds . . . to the other proof available

22

to establish the fact for which it is offered"; and "the need for the evidence." Id. at 75-76 (2). Here, because the evidence from the prior acts "was needed to counter . . . [Freeman's] theory of self-defense . . . the trial court did not err when it found that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice to the appellant." *Anthony*, 298 Ga. at 833 (4).[9] We find no abuse of discretion.

*Judgment affirmed. Barnes, P. J., and Brown, J., concur.*

---

[9] Because we have determined that the prior acts involving Freeman's mother and ex-girlfriend were properly admitted to show motive, we need not evaluate whether they were also admissible to show intent or absence of mistake or accident. *Smart*, 299 Ga. at 418 (2) (a), n. 3.