**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 27, 2012**

# In the Court of Appeals of Georgia

A12A0806. RANSOM v. THE STATE.

BRANCH, Judge.

Following a jury trial, Timothy Lamar Ransom was convicted of two counts of aggravated assault[1] and three counts of aggravated battery.[2] Ransom now appeals from the denial of his motion for a new trial, asserting that the trial court erred in failing to grant a mistrial following the inadvertent admission of evidence of Ransom's bad character and in refusing to instruct the jury on the law of self-defense. We find no error and affirm.

Viewed in the light most favorable to the verdict, *Goolsby v. State*, 299 Ga. App. 330-331 (682 SE2d 671) (2009), the record shows that Mario Freeman arranged

---

[1] OCGA § 16-5-21 (a).

[2] OCGA § 16-5-24 (a).

for appellant to purchase approximately two pounds of marijuana from a third party. Ransom, together with his brother Michael, Freeman, and another acquaintance, Robert Hull, went together to the apartment complex where the drug transaction was scheduled to occur. After arriving in the parking lot of the complex, Ransom gave $2,400 in cash to Freeman. He then remained in the parking lot while Freeman and Hull went into the designated apartment, where they were robbed at gunpoint. Freeman returned to Ransom without the drugs or the money and explained what had happened, whereupon Ransom became very angry about the loss of his money.

Ransom and his companions then drove to Ransom's home, where they found another group of men waiting in the yard. A disagreement arose over who was to blame for the loss of the money. Ransom then went into his house, returned holding a gun, and asked Hull "where's my . . . money?" When Hull responded that he did not know, several of the men, including Ransom, proceeded to beat Hull until he was unconscious. They then dragged Hull down the street, and dumped his body on the side of the road. When Hull was discovered by emergency personnel, his eyes were swollen shut, his jawbone and orbital bone were broken, he had lost a number of teeth, and his head injuries were so severe that they significantly impacted his cognitive

2

functioning. At trial, Ransom testified in his own defense and stated that he was not present at the time of the beating.

1. The record shows that as part of its case in chief, the State sought to admit a recorded version of Ransom's statement to an investigator at the Jackson County Sheriff's Office. Prior to trial, the parties agreed to redact those portions of the statement referencing Ransom's prior criminal history and the State prepared a proposed redacted version. The State then provided a transcript of the proposed redacted statement to defense counsel, and defense counsel approved its use. The agreed-upon transcript, however, was thereafter misplaced and a new one was prepared by the prosecutor's office. The replacement transcript mistakenly included a single reference to Ransom's time in prison.

At trial, the jurors listened to the audio recording of the statement and were provided with copies of the replacement transcript. At the time the transcript was published to the jury, defense counsel had not been informed that the transcript represented a replacement of the one he had reviewed and approved and he was therefore unaware of any changes to the document. Although the State provided defense counsel with a copy of the transcript at the time it was presented to the jury, defense counsel did not review it, because he believed that he had already seen and

3

approved the document. Defense counsel did not notice the error until the jury deliberations had begun, at which time he moved for a mistrial. Finding that the failure to properly redact the transcript was an accident, the trial court denied the motion for a mistrial, but did provide a curative instruction to the jury, directing them to disregard any evidence that might indicate that "this [d]efendant may have been in trouble with the law before." The trial court then polled each juror individually to determine if he or she would be able to disregard any such inappropriate information.

On appeal, Ransom asserts that the trial court erred in failing to grant a mistrial We disagree. "We review a trial court's denial of a motion for a mistrial based on the injection of improper character evidence for manifest abuse of the court's discretion."(Citation and punctuation omitted.) *Adams v. State*, 276 Ga. App. 319, 321 (2) (623 SE2d 525) (2005)." [T]he . . . court's discretion . . . will not be disturbed so long as proper remedial measures are taken to ensure the right to a fair trial." (Footnote omitted.) *Culler v. State*, 277 Ga. 717, 719 (3) (594 SE2d 631) (2004). In light of the inadvertent nature of the introduction of the improper evidence, as well as the remedial steps taken by the trial court, we find no abuse of discretion in this case. See *Hunter v. State*, 281 Ga. 526, 530 (3) (640 SE2d 271) (2007).

In *Hunter*, our Supreme Court found that curative instructions were an adequate remedy where the defendant's character was improperly placed into evidence because of the State's failure to properly redact references to the defendant's prior jail sentence from a recording of the defendant's interview with police. Id. Accord *Culler*, supra. (trial court did not abuse discretion in denying defendant's motion for mistrial based upon State's witness improperly referencing defendant's prior jail sentence when trial court found that the witnesses' improper statement was inadvertent and gave a curative instruction to jurors). Here, although the trial court did not provide a curative instruction immediately after the introduction of the improper evidence, it did so as soon as defense counsel raised its objection to the improperly redacted transcript, and it also polled the jurors as to their ability to disregard that evidence. Under the relevant law, therefore, we must conclude that the trial court did not abuse its discretion in denying the motion for a mistrial. See *Kerdpoka v. State*, 314 Ga. App. 400, 402-403 (2) (724 SE2d 419) (2012) (no abuse of discretion by trial court in denying motion for a mistrial, finding that improper reference to defendant's DUI was inadvertent and that trial court provided a prompt curative instruction).

2. Ransom contends that the trial court erred in refusing trial counsel's request for jury instructions on self-defense.[3] "To authorize a jury instruction on a subject, there need only be produced at trial slight evidence supporting the theory of the charge. Whether the evidence presented is sufficient to authorize the giving of a charge is a question of law." (Citations and punctuation omitted.) *McNeal v. State*, 289 Ga. 711, 714 (4) (715 SE2d 95) (2011).

Because self-defense represents an affirmative defense, we agree with the trial court that there was no evidence to support the giving of the requested charge.

> With a legal affirmative defense, *the accused admits the elements of the crime*, but seeks to justify, excuse, or mitigate by showing no criminal intent; all elements of the parts of the crime are admitted with the exception of the intent. All defenses which have been held to be statutory affirmative defenses meet this criteria; i.e., justification, self-defense or defense of others. Each of these affirmative defenses requires that the defendant admit the crime before he can raise such defense.

(Citations and punctuation omitted; emphasis supplied.) *Hicks v. State*, 287 Ga. 260, 261-262 (2) (695 SE2d 195) (2010). See also *Lightning v. State*, 297 Ga. App. 54, 59-

---

[3] Under OCGA §16-3-21 "[a] person is justified in threatening or using force against another when and to the extent that he. . . reasonably believes that such threat or force is necessary to defend himself . . . or a third person against such other's imminent use of unlawful force."

60 (5) (676 SE2d 780) (2009) (a defendant must admit the act or he is not entitled to a charge on justification). In the present case, Ransom did not admit to any elements of the crime charged. Rather, his sole defense at trial was that he was not present when the assault took place. Specifically, Ransom testified that "I pulled out and we left . . . what happened[,] I didn't see any of that." In light of Ransom's own testimony, therefore, he has no basis for claiming self-defense and the trial court properly refused to charge the jury on that affirmative defense.

Furthermore, we find no merit in Ransom's assertion that the necessary evidence to support a charge on self-defense was provided by testimony from the victim, Hull. At trial, Hull stated that he struck a person who was not Ransom before Ransom struck him multiple times. This argument concerning Hull's testimony, however, ignores the fact that Ransom never admitted hitting Hull at all, much less that Ransom hit Hull in self-defense or defense of another. Accordingly, the trial court did not err in refusing to instruct the jury on self-defense based on the testimony of the victim. *Williams v. State*, 301 Ga. App. 731, 734 (4) (b) (688 SE2d 650) (2009) (trial court's failure to charge on self-defense was not in error when defendant provided no evidence that he acted in self-defense). See also *Hicks*, supra at 262 (2) (trial court correctly refused to give jury instruction on justification when evidence

7

showed that the victim and third party had been involved in an altercation, but that although defendant shot the victim, there is no evidence that he "entered the fracas *in defense of* [the third person]") (emphasis supplied).

*Judgment affirmed. Miller, P. J., and Ray, J., concur.*