**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 7, 2014**

# In the Court of Appeals of Georgia

A14A0497. TAYLOR v. THE STATE.                                  DO-017 C

DOYLE, Presiding Judge.

Following a jury trial during which he represented himself, Daniel W. Taylor was convicted of aggravated assault,[1] five counts of terroristic threats,[2] burglary,[3] aggravated assault on a peace officer,[4] obstruction of a law enforcement officer,[5]

---

[1] OCGA § 16-5-21 (a) (2).

[2] OCGA § 16-11-37 (a).

[3] OCGA § 16-7-1 (b).

[4] OCGA § 16-5-21 (a) (2), (c).

[5] OCGA § 16-10-24 (b).

removal of a weapon from a public official,[6] and stalking.[7] Taylor appeals pro se the subsequent denial of his motion for new trial, arguing that the trial court erred by (1) denying his motion to suppress; (2) denying his motion for plea in bar following his speedy trial demand; (3) sentencing him as a recidivist; (4) failing to merge certain charges; (5) engaging in judicial misconduct; (6) admitting false testimony; and (7) failing to give his requested jury charges. Taylor also challenges the sufficiency of the evidence. For the reasons that follow, we vacate Taylor's conviction for obstruction, affirm on the remaining counts, and remand for resentencing.

Viewed in favor of the verdict,[8] the record shows that in early May 2008, Taylor was estranged from his wife, Kassandra Norman, and she took from him the key to her apartment.[9] Thereafter, on May 7, 2008, Taylor left multiple threatening voice mails for Norman in which he threatened to kill her. Later that day, Taylor waited outside Norman's gated apartment complex until he saw her and their two

---

[6] OCGA § 16-10-33 (b) (2) (a).

[7] OCGA § 16-5-90 (a) (1). Taylor was also charged with two counts of cruelty to children, but those counts were later nolle prossed by the State.

[8] See *Jackson v. Virginia*, 443 U. S. 307, 319 (II) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[9] Taylor was not on the apartment lease, which was in Norman's name.

children, crawled under the fence, charged towards her, and began striking her. Taylor grabbed Norman, slammed her to the ground, causing her to strike her head on the pavement, and cut her on her back and neck with a sharp object. Cedric Scott, an apartment maintenance worker, observed the attack, yelled out, and chased Taylor, who fled the scene.

On May 9, 2008, Norman applied for and obtained a family violence ex parte protective order against Taylor,[10] and she took her two children to a domestic violence shelter to spend the night. The same day, Scott saw Taylor enter Norman's apartment building, and he called Deputy Wesley Carmack, the courtesy officer for the apartment complex, and directed the employees in the office to call the police.

Carmack and Scott went to Norman's apartment, where they observed that the door had been kicked in and was ajar. Carmack, who was in plain clothes, but wearing his badge, looked in and saw Taylor in the kitchen. Carmack entered the apartment, announced himself as a police officer, showed Taylor his weapon, told him that he was not allowed to be on the property, and directed him to turn around so he could cuff him. After Carmack secured one of Taylor's hands in the handcuffs, Taylor began swinging at the officer, grabbed him, punched him, struck him in the

---

[10] The record does not indicate when the order was served on Taylor.

3

head with the handcuffs, and repeatedly tried to grab his gun. Carmack eventually shot Taylor in the foot after struggling with him for five or six minutes, during which time Taylor continued to reach for his gun and refused the officer's repeated commands to release him. Taylor continued to struggle, but Scott and two other maintenance workers were eventually able to subdue and cuff him. Police later found a letter from Taylor to Norman stating that he came to the apartment to kill her, but changed his mind and decided to kill himself instead, and they found a copy of Taylor's handwritten will.

Taylor was arrested and charged. Taylor fired at least four appointed attorneys before eventually proceeding to trial pro se. Following his convictions, Taylor appeals the denial of his subsequent motion for new trial.

1. As an initial matter, we note that a majority of Taylor's arguments are not supported by citations to the record as required by Court of Appeals Rule 25 (a) (1), (c) (2) (1). As we have previously stated, "[o]ur requirements for appellate briefs were created not to provide an obstacle, but to aid parties in presenting arguments in a manner most likely to be fully and efficiently comprehended by this Court; a party will not be granted relief should we err in deciphering a brief which fails to adhere

4

to the required form."[11] We further note that Taylor has attached numerous exhibits to his appellate brief and caution him that "'[e]xhibits attached to an appellate brief but not appearing in the record transmitted by the trial court cannot be considered by this court and afford no basis for reversal.'"[12]

2. Taylor argues that trial court erred by denying his motion to suppress the evidence recovered from Norman's apartment because the officer's entry therein violated his Fourth Amendment rights.[13] This enumeration is without merit.

Pretermitting whether Taylor has standing to challenge the search,[14] based upon the evidence that Taylor viciously attacked Norman two days before, her testimony that he was not authorized to be on the property, and the officer's observation that

---

[11] (Punctuation omitted.) *Pruitt v. State*, 323 Ga. App. 689, 689-690 (1) (747 SE2d 694) (2013).

[12] *Hughes v. State*, 323 Ga. App. 4, 11 (4) (a) (ii) (746 SE2d 648) (2013).

[13] We note that although the trial court initially failed to transmit the transcript of the July 14, 2010 hearing at which the parties presented argument and evidence regarding the motion to suppress and motion to dismiss on speedy trial grounds, the trial court has since supplemented the record with the transcript.

[14] See *Berry v. State*, 313 Ga. App. 516, 519, n. 9 (722 SE2d 127) (2012) ("'A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed.'")

Taylor had kicked in the door to her apartment, exigent circumstances justified Deputy Carmack's entry into the apartment.[15]

3. Taylor contends that the trial court erred by denying his plea in bar and motion to dismiss on constitutional speedy trial grounds. We disagree.

"*Barker v. Wingo*[16] and *Doggett v. United States*[17] . . . guide a court in its consideration of whether a delay in bringing an accused to trial amounts to a denial of his right to a speedy trial."[18] Our Supreme Court has recently reiterated that

> [i]n Georgia, the application of these principles to the circumstances of a particular case is a task committed principally to the discretion of the trial courts, and it is settled law that our role as a court of review is a limited one. Under our precedents, we must accept the factual findings of the trial court unless they are clearly erroneous, and we must accept the ultimate conclusion of the trial court unless it amounts to an abuse

---

[15] See, e.g., *Lindsey v. State*, 247 Ga. App. 166, 168 (1) (543 SE2d 117) (2000) ("An exigent circumstance which does justify the warrantless entry of a private home is the officer's reasonable belief that such action is a necessary response on his part to an emergency situation. It has been repeatedly held that reasonable concern for a victim's welfare justifies a warrantless entry.") (citation and punctuation omitted).

[16] 407 U. S. 514 (92 SCt 2182, 33 LE2d 101) (1972).

[17] 505 U. S. 647 (112 SCt 2686, 120 LE2d 520) (1992).

[18] *State v. Alexander*, __ Ga. ___ (Case No. S14A0439, decided May 5, 2015).

6

of discretion, even though we might have reached a different conclusion were the issue committed to our discretion.[19]

There is a two-part test applicable to considering a motion to dismiss on speedy trial grounds.

The first stage requires a determination of whether the interval from the defendant's arrest, indictment, or other formal accusation to the trial is sufficiently long to be considered "presumptively prejudicial." Where the delay is only ordinary, rather than presumptively prejudicial, the defendant's speedy trial claim fails at the threshold. A delay that is deemed to be presumptively prejudicial, however, triggers the second stage of the analysis. At this second stage, a court must determine whether the defendant has been deprived of his right to a speedy trial by analyzing a four-part balancing test that considers the conduct of both the State and the defendant (i.e., the *Barker–Doggett* factors): (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the defendant was prejudiced by the delay. Standing alone, none of these factors [is] a necessary, or sufficient condition to a finding of deprivation of the right to a speedy trial, but rather should be considered as part of a balancing test.[20]

---

[19] (Punctuation omitted.) Id., quoting *State v. Buckner*, 292 Ga. 390, 391 (738 SE2d 65) (2013).

[20] (Citations and punctuation omitted.) *Stewart v. State*, 310 Ga. App. 551, 552-553 (713 SE2d 708) (2011).

(a) *Presumptive prejudice.* "Speedy trial rights attach at the time of arrest or formal indictment, whichever is earlier."[21] Here, Taylor was arrested on May 9, 2008, and the trial court entered an order denying his speedy trial motion on July 14, 2010. The 27-month delay in this case was presumptively prejudicial.[22]

(b) *Barker-Doggett analysis.*

(i) *Length of the delay.* "The 2[7]-month pretrial delay in this case was uncommonly long, and is a factor weighed against the State."[23]

(ii) *Reasons for the delay.* The trial court concludes in its order that the delay in bringing Taylor to trial "is wholly attributable" to Taylor's dismissal of at least four court-appointed attorneys before he filed his motion, and Taylor caused even more delay by filing a motion to recuse the trial judge. This finding is supported by the record, and we therefore defer to the trial court's conclusion that this factor is therefore weighed against Taylor.

---

[21] (Punctuation omitted.) *Fleming v. State*, 324 Ga. App. 481, 488 (3) (c) (i) (749 SE2d 54) (2013).

[22] See id.

[23] Id.

(iii) *Assertion of the right.* Taylor first asserted his right to a speedy trial on November 10, 2009 by filing a pro se out-of-time demand for speedy trial,[24] and he filed two other demands thereafter, one of which was deemed untimely, and the other he withdrew.

> Although the State bears the burden to ensure that an accused is brought to trial promptly, the accused bears some responsibility to invoke the speedy trial right and put the government on notice that he would prefer to be tried as soon as possible. Once the right to a speedy trial attaches, the accused must assert it with reasonable promptness, and "delay in doing so normally will be weighed against him. That said, the accused is not required to demand a speedy trial at the first available opportunity, only to demand it "in due course."[25]

The trial court did not indicate whether it weighed this factor against Taylor and, if so, to what extent, but it did note that Taylor waited a year and a half after his arrest to assert his right. Despite the trial court's failure to specify its conclusion, this factor weighs against Taylor.[26]

---

[24] The demand was filed under a separate indictment number.

[25] *Alexander*, ___ Ga. at ___ (2) (a) (c).

[26] See *Nealy v. State*, 246 Ga. App. 752, 754 (3) (3) (542 SE2d 521) (2000) (11-month delay in asserting right to a speedy trial is weighed against the defendant).

9

(iv) *Prejudice.* Taylor did not assert lengthy pretrial incarceration or excessive anxiety or concern below. As the trial court concluded, Taylor contended in his written motion below that the State's failure to bring him to trial in a timely manner allowed the State to "'gain a tactical advantage' over him." At the hearing, Taylor testified only that he was having trouble getting in touch with his witnesses due to his incarceration. He did not identify the witnesses, show that they could not be located, or explain how they would have testified and helped his defense. Under these circumstances, Taylor "has failed to present any actual evidence to show that his defense would be impaired, the most important component of the prejudice factor."[27]

(v) *Balancing the factors.* Although the length of the delay is weighed against the State, the reasons for the delay, Taylor's delay in asserting his right to a speedy trial, and his failure to establish prejudice are weighed against him. Under

---

[27] (Punctuation omitted.) *Lambert v. State*, 302 Ga. App. 573, 577 (4) (692 SE2d 15) (2010). See also *Fleming*, 324 Ga. App. at 490 (3) (c) (v) (defendant failed to establish prejudice because he did not provide details as to what a missing witness's testimony would have shown);

10

these circumstances, the trial court did not abuse its discretion by denying his speedy trial motions.[28]

4. Taylor argues that the trial court erred by sentencing him as a recidivist because the State failed to provide him with notice of its intent to seek recidivist sentencing under OCGA § 17-10-7 (c) within ten days of trial.

OCGA § 17-16-4 (a) (5) requires the State to, "no later than ten days prior to trial, or at such time as the court orders *but in no event later than the beginning of the trial*, provide the defendant with notice of any evidence in aggravation of punishment that the state intends to introduce in sentencing."[29] "'The important requirement is that the defendant be given an unmistakable advance warning that the prior convictions will be used against him at sentencing so that he will have enough time to rebut or explain any conviction record.'"[30] Here, the State provided Taylor with notice of its intent to seek recidivist sentencing on the second day of trial, before the jury was sworn. "This [C]ourt has previously held that notice received prior to the jury's being sworn is sufficient to satisfy the requirement of the statute. Because

---

[28] See *Jenkins v. State*, 294 Ga. 506, 513 (2) (b) (c) (755 SE2d 138) (2014).

[29] (Emphasis supplied.).

[30] *Ross v. State*, 313 Ga. App. 695, 698 (1) (d) (722 SE2d 411) (2012).

11

[Taylor] received timely notice of the [S]tate's intention to seek recidivist punishment, no error has been shown."[31]

5. Taylor contends that the trial court erred by failing to merge his convictions for aggravated assault on a peace officer, removal of a weapon from a public official, and obstruction of a law enforcement officer because they constitute the same conduct.

(a) *Obstruction and aggravated assault on officer.* As we have previously held,

OCGA § 16-1-7 (a) affords a defendant with substantive double jeopardy protection by prohibiting multiple convictions and punishments for the same offense, and OCGA § 16-1-7 (a) (1) prohibits a defendant from being convicted of more than one crime if one crime is included in another. Obstruction of a police officer is "included in" the crime of aggravated assault on a police officer when the former is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the latter.[32]

---

[31] (Punctuation omitted.) *Daniels v. State*, 296 Ga. App. 795, 798 (3) (676 SE2d 13) (2009), quoting *Jenkins v. State*, 235 Ga. App. 547, 549 (3) (a) (510 SE2d 87) (1998). See also *Ross*, 313 Ga. App. at 698 (1) (d).

[32] (Punctuation omitted.) *Dobbs v. State*, 302 Ga. App. 628, 630 (2) (691 SE2d 387) (2010).

12

Here, Taylor was charged with aggravated assault on a peace officer "by fighting and hitting [Carmack] with hands, objects when used offensively against a person are likely to result in serious bodily injury." He was charged with obstruction "by offering violence to the person of [Carmack], by fighting [him]." Thus,

> each count of the crime of obstruction was established by proof of the same or less than all the facts required to establish each count of the crime of aggravated assault. . . . Accordingly, [Taylor's] conviction[] for obstruction and the sentence[] imposed thereon must be vacated, and the case must be remanded to the trial court for resentencing.[33]

(b) *Removal of weapon from a pubic official*. The State charged Taylor with removal of a weapon from a public official by "attempt[ing] to remove a handgun from the possession of . . . Carmack, a peace officer as defined in OCGA § 35-8-2." "[M]erger is not required where the two crimes are based on more than one separate act or transaction. If one crime is complete before the other takes place, the two crimes do not merge." And the aggravated assault count was not established by the

---

[33] Id. See also *Garrett v. State*, 306 Ga. App. 420, 421 (a) (703 SE2d 666) (2010).

same or less than all of the facts required to establish the count of removal of a weapon from an official. Therefore, these counts do not merge.[34]

6. Taylor argues that the trial court engaged in judicial misconduct and exhibited bias and prejudice. We find no basis for reversal.

As best as we can discern from Taylor's brief on appeal, it appears that this argument is limited to the trial court's ruling sustaining the State's objection to him reading from or admitting into evidence an affidavit of the property manager during his cross-examinations of the victim and Deputy Carmack without laying a proper foundation therefor. Neither the property manager nor Taylor testified at trial. Thus, Taylor's attempts to impeach the victim and Carmack using the statement of an absent witness were improper.[35] Accordingly, the trial court properly sustained the State's objection to admission of the affidavit and to Taylor's attempt to read from it during his cross-examination of the witnesses.[36]

---

[34] See *Garrett v. State*, 306 Ga. App. 420, 442 (b) (703 SE2d 666) (2010).

[35] See former OCGA § 24-9-83 ("A witness may be impeached by contradictory statements previously made by [her] as to matters relevant to his testimony and to the case."); *Mobley v. State*, 265 Ga. 292, 296 (9) (a) (455 SE2d 61) (1995); *Adams v. State*, 217 Ga. App. 706, 707 (2) (459 SE2d 182) (1995).

[36] The trial court, which warned Taylor of the risks inherent in self-representation, explained the basis for his rulings on this issue to Taylor, who

7. Taylor contends that his convictions should be reversed because the victim and several witnesses gave false testimony and committed perjury.[37] "[Taylor] has not[, however,] shown that the prosecution knowingly used perjured testimony on a material point[,]. . . . [and] there is no constitutional requirement that the witnesses upon whom the State relies to prove its case must give consistent evidence."[38] As we have previously held,

> the applicable constitutional guarantee is the Sixth Amendment right to a trial before an impartial jury for a determination of the credibility of the State's case and defendant's defense. Here, the convictions are not based upon the State's knowing use of perjured testimony, but upon that version of the events most unfavorable to [Taylor], which version the jury accepted after hearing all the evidence and resolving the credibility

---

ultimately did not understand the proper method for admitting evidence and impeaching witnesses. We note that "pro se litigants are not exempt from the rules of evidence and applicable burdens of proof." *Wilson v. McNeely*, 307 Ga. App. 876, 880 (3) (705 SE2d 874) (2011). See also *Salazar v. State*, 256 Ga. App. 50, 52 (4) (567 SE2d 706) (2002) ("The trial court . . . engaged in appropriate attempts to require [Taylor] to comply with rules of evidence and procedure, which task [Taylor] willingly undertook when he decided to represent himself.") (punctuation omitted).

[37] Taylor also alleges that the trial court and the prosecutor testified falsely under oath and lied. Pretermitting his failure to provide citations to the record to support this allegation,neither the prosecutor nor the trial judge testified in this case.

[38] *White v. State*, 315 Ga. App. 54, 56 (1) (726 SE2d 548) (2012).

15

of all of the witnesses. [Taylor] has thus failed to show that the trial court erred by allowing [the witnesses] to testify.[39]

8. Taylor contends that the trial court erred by failing to give certain jury charges that he requested, including charges on "cohabitation," self-defense and justification, and aggravated assault to the jury.[40]

Based upon our review of the record and Taylor's failure to provide a record citation therefor, it appears that although Taylor provided the court with written requests to charge, he did not file those requests. At the close of the charges, Taylor objected generally to the trial court's failure to give his requested charges, but did not specify those charges or the basis for his objection. OCGA § 17-5-58 provides:

> (a) Any party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate. Such objections shall be done outside of the jury's hearing and presence.

> (b) Failure to object in accordance with subsection (a) of this Code section shall preclude appellate review of such portion of the jury

---

[39] (Punctuation and footnote omitted.). Id. at 57 (1).

[40] Taylor also argues that the trial court erred by giving his requested charge on obstruction. Based upon our holding vacating his conviction for obstruction, we need not address this particular argument.

16

charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties. Such plain error may be considered on appeal even if it was not brought to the court's attention as provided in subsection (a) of this Code section.

A finding of

> [p]lain error requires a clear or obvious legal error or defect not affirmatively waived by the appellant that must have affected the appellant's substantial rights, i.e., it affected the outcome of the trial-court proceedings. Stated more succinctly, the proper inquiry is whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings.[41]

Further, "[a] criminal defendant is ordinarily required to present written requests for any desired jury instructions. He is relieved of this duty only where the omission is clearly harmful and erroneous as a matter of law in that it fails to provide the jury with the proper guidelines for determining guilt or innocence."[42] We review Taylor's

---

[41] (Punctuation omitted.) *Alvelo v. State*, 290 Ga. 609, 615 (5) (724 SE2d 377) (2012).

[42] (Punctuation and citations omitted.) *Woods v. State*, 291 Ga. 804, 809-810 (3) (733 SE2d 730) (2012), quoting *Shepherd v. State*, 280 Ga. 245, 252 (4) (626 SE2d 96) (2006). See also OCGA § 5-5-24(a)

17

arguments regarding the trial court's failure to give certain jury charges gunder these standards.

To authorize a jury charge on self-defense or justification, both of which are affirmative defenses, the defendant "must admit the elements of the crime, but seeks to justify, excuse, or mitigate by showing no criminal intent."[43] Here, Taylor did not testify, and the evidence at trial showed that: he attacked the victim; he kicked in the door to her apartment two days later; he was not on the lease nor did he have her permission to be there; and, once Deputy Carmack, who was wearing his police badge, entered the apartment and attempted to handcuff him, Taylor grabbed him, punched him, struck him in the head with handcuffs, and attempted to grab his gun. Under these circumstances, the evidence did not warrant jury charges on justification or self-defense.[44]

Taylor does not specify the specific charges that he requested and the trial court refused to give regarding cohabitation and aggravated assault. Nevertheless, the trial

---

[43] (Punctuation and emphasis omitted.) *Ransom v. State*, 318 Ga. App. 764, 766 (2) (734 SE2d 761) (2012).

[44] See OCGA § 16-3-21 (a) (justification); *Hudson v. State*, 325 Ga. App. 657, 630 (4) (b) (754 SE2d 626) (2014); *Ransom*, 318 Ga. App. at 767 (2).

18

court gave the pattern charges on burglary[45] and aggravated assault, which adequately covered the crimes, and it read the indictment to the jury.[46] Under these circumstances, Taylor has failed to demonstrate clear harm or plain error in the trial court's failure to give his unspecified charges on these counts.

---

[45] Taylor argues that he could not be convicted of burglary because he lived in the apartment with the victim, an argument which was unsupported by the evidence. To the extent that Taylor meant to argue that the trial court should have charged the jury on the use of force in defense of *habitation*, the evidence did not support such a charge. See OCGA § 16-3-23 ("A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to prevent or terminate such other's unlawful entry into or attack upon a habitation; however, such person is justified in the use of force which is intended or likely to cause death or great bodily harm only if: (1) The entry is made or attempted in a violent and tumultuous manner and he or she reasonably believes that the entry is attempted or made for the purpose of assaulting or offering personal violence to any person dwelling or being therein and that such force is necessary to prevent the assault or offer of personal violence; (2) That force is used against another person who is not a member of the family or household and who unlawfully and forcibly enters or has unlawfully and forcibly entered the residence and the person using such force knew or had reason to believe that an unlawful and forcible entry occurred; or (3) The person using such force reasonably believes that the entry is made or attempted for the purpose of committing a felony therein and that such force is necessary to prevent the commission of the felony.").

[46] See *Jarrett v. State*, 299 Ga. App. 525, 531 (7) (a) (683 SE2d 116) (2009); *Moore v. State*, 283 Ga. 151, 155 (4) (656 SE2d 796) (2008) ("The failure to give a jury charge in the precise language requested is not a cause for reversal where the given instruction substantially covers the applicable principles of law.").

19

9. Finally, Taylor challenges the sufficiency of the evidence, arguing only that the witnesses committed perjury and no reasonable jury could have found him guilty.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[47] Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld. The testimony of a single witness is generally sufficient to establish a fact.[48]

Taylor fails to make any specific arguments regarding how the evidence is insufficient to support the convictions, and we find that based on the facts presented above, the jury was authorized to find him guilty of each count.[49]

---

[47] 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[48] (Punctuation and footnotes omitted.) *Waller v. State*, 267 Ga. App. 608 (600 SE2d 706) (2004).

[49] See 16-5-21 (a) (2) (aggravated assault); OCGA § 16-11-37 (a) (terroristic threats); OCGA § 16-7-1 (burglary); OCGA § 16-5-21 (a) (2), (b) (aggravated assault on a peace officer); OCGA § 16-10-24 (b) (obstruction); OCGA § 16-10-33 (b) (2) (a) (removal of a weapon from a public official); OCGA § 16-5-90 (a) (1) (stalking).

20

10. Taylor's various motions filed in this case on appeal are denied as moot.

*Judgment affirmed in part and vacated in part; case remanded for resentencing. Miller and Dillard, JJ., concur.*